FRED A. RISSER, Chairman Senate Organization Committee
You have asked a series of questions regarding the process by which appointments were made to the District No. 4 Vocational, Technical and Adult Education (VTAE No. 4) Board and approved by the State Board of Vocational, Technical and Adult Education (state board) on September 24, 1986.
 1. If these appointments were such that the District 4 Board is not in compliance with Wis. Stats. 38.08(1)(a)1. and 2., does the District 4 Board have the authority to administer the district . . . ?
If a situation would arise where an individual holds a position on the board as a result of a defective appointment, public policy considerations would dictate that the actions taken by the board would still be valid. Therefore, the board would continue to have the authority to administer the district as set forth in sections 38.12-38.18, Stats.
This result follows from the de facto doctrine of law which has evolved out of a need to protect the interests of third persons and the general public in the official actions of persons exercising the duty of office. It would be unreasonable to expect the public to inquire into the title of every official or to require officials to be constantly defending their right to office. This doctrine has been specifically followed in Wisconsin with respect to appointed officials. In re Burke, 76 Wis. 357,45 N.W. 24 (1890) and 67 Op. Att'y Gen. 169 (1978).
Pursuant to section 38.04(15), the state board has established criteria and procedures for review of district board appointments. The state board could require the defect in appointment to be corrected at the next available opportunity. The district could remove the unqualified member at any time. *Page 121 
 2. Does the following statement from the "Plan of Representation" prepared by the Appointment Committee of District No. 4 meet the specific requirements of section 38.08(1)(a)2. that "the employer and employe members of the district board shall be representative of the various businesses and industries"?
 "Area Vocational, Technical and Adult Education District No. 4 Plan of Representation 1986. `The plan of representation for the Area Board of Vocational, Technical and Adult Education District No. 4 shall be that all board members shall represent the District in its entirety.'"
Chapter VTAE 2 of the Wisconsin Administrative Code establishes criteria and procedures for the review of district board member appointment by the state board as required under the statutes. Section VTAE 2.04(2)(b) provides that the plan of representation prepared by the appointment committee shall include:
 A statement explaining the plan of representation and demonstrating how the plan of representation gives equal consideration to:
 1. The general population distribution of the district.
2. The distribution of women within the district.
 3. The distribution of minorities within the district.
The appointment committee is then required to submit with its proposed appointments a "statement explaining how the employer and employe members as appointed are representative of the various businesses and industries in the district as required under s. 38.08(1)(a)2, Stats." Wis. Admin. Code § VTAE 2.04(3)(c) (1986).
The plan of representation of VTAE No. 4 begins with the paragraph you quote and goes on to state:
 The plan of representation for the area board of Vocational, Technical and Adult Education District No. 4 takes into consideration the requirements of the statutes that equal consideration be given to the general population distribution of the District, the distribution of women within the District, and the distribution of minorities within the District. *Page 122 
This language complies with the requirement that the plan of representation gives equal consideration to the three elements found in section VTAE 2.04(2)(b), which are listed above. The appointments themselves must then be representative of the various businesses and industries in the district. Whether the appointments were representative is a factual question which would require a detailed analysis of information not provided to this office. Even were such information to be available, opinions issued by the attorney general are not intended to address questions of that nature.
 3. Does the District Appointment Committee or the State Board have the authority to make certain "categories", i.e. employer/employe "primary" and others, i.e. representatives of the various businesses and industries "secondary" with the intent being that appointments must include "primary" but need not necessarily meet the "secondary"?
The statutes provide:
 1. A district board shall administer the district and shall be composed of 9 members who are residents of the district, including 3 employers, 3 employes, 2 additional members and a school district administrator, as defined under s. 115.001(8) . . . .
 2. The employer and employe members of the district board shall be representative of the various businesses and industries in the district. The school district administrator shall be employed by the school board of a school district located in the district. At least 2 of the members of the district board shall be elected officials of a county board of supervisors, common council, village board of trustees, town board of supervisors or school board . . . .
Sec. 38.08(1)(a)1.-2., Stats.
The statute clearly requires that the board contain three employers, three employes, two at-large members and one school district administrator. These are required categories. Then in addition, the statute provides that of these members, two must possess the secondary characteristic of being an elected official, and the employer and employe members must be representative of the various businesses and industries in the district.
Under section 38.04(15), the state board is given authority to establish criteria and procedures for the review of district board *Page 123 
member appointments. It has done this at Wis. Admin. Code § VTAE 2.04. Under these regulations, the state board will look for both the required number of employes and employers and representation among businesses and industries. It cannot ignore these statutory requirements.
 4. When a member is midway into a 3-year term as an "elected official" and does not seek re-election to the office that qualified him for that category:
 a. does the member remain representative of the "elected official" category for the remainder of his term?
. . . .
 b. must the next available appointment be used to fill that category? or
c. must the member resign? or
 d. can the member be removed by 17.16(1), Wis. Stats.?
The member does not remain representative of the "elected official" category for the remainder of his term of appointment. He or she does, however, continue to serve in that capacity until a successor is appointed and qualified. Sec. 38.08(2), Stats. Because the statutes require that at least two of the members of the board be elected officials, the board must use the "next available opportunity" to correct the imbalance. The board must look at the terms of all existing board members to determine when the imbalance could first be corrected through the appointment process. This would occur as soon as a vacancy exists, and the board has an opportunity to correct the deficiency in the number of elected officials by appointing a person to fill an employer, employe or additional member position (whichever is vacant), who also possesses the secondary characteristic of being an elected official.
The member need not resign. A person who meets the "elected official" requirement found in section 38.08(1)(a)2. must also have been appointed to the board as a member of one of the categories found in section 38.08(1)(a)1., that is, an employer, an employe or an at-large member. The member can be removed at the end of his term under section 17.13(1). However, the person can continue to be reappointed so long as he remains a member of one of these categories. *Page 124 
Section 17.16(1) does not provide removal authority. It merely states that "[r]emovals from office at pleasure shall be made by order, a copy of which shall be filed as provided by sub. (8), except that a copy of the order of removal of a court commissioner, a jury commissioner or family court commissioner shall be filed in the office of the clerk of the circuit court." Section 17.13(1) gives the appointment board authority to remove any of its appointed members "at pleasure."
 5. . . . [D]id the State Board err in returning the May 2, 1986 and June 10, 1986 recommendations of the District Appointment Committee for failure to include a "new elected official"?
The state board did not err in returning the recommended appointments to VTAE No. 4 for failure to include a "new elected official," because the appointments as proposed would have resulted in an absence of one of the required elected officials. The appointment committee was required to use this first available opportunity to correct this imbalance. This would have resulted in the district board not being in compliance with the statutes on composition of a district board. Therefore, it was necessary for the appointments to be made in such a manner that this category be complete.
 6. . . . [D]id the State Board err in extending additional time to the Appointment Committee in lieu of itself . . . appointing the district board members in accordance with 38.10(2)(a)2 and 38.10(2)(f)?
On May 2, 1986, the appointment committee of VTAE No. 4 submitted its recommendations for three members. On May 28, 1986, the state board disapproved the district board's appointments. The appointment committee at that point had the following options. It could reconvene the appointment committee, use the same slate of candidates, correct the imbalance and resubmit the candidates selected to the state board for approval and/or disapproval or could refuse to act and indicate such to the state board, in which case the state board would assume the appointment responsibility.
The district appointment committee met again and resubmitted these same names. These names were not acceptable, and the state board informed the appointment committee that if it did not submit *Page 125 
acceptable nominations within the required time period, it would be required to formulate a plan of representation and appoint the district board members itself.
The statute provides that the state board should make the district appointments only if the local board fails to take action and reach agreement within thirty days after their first meeting. Sec. 38.10(2)(f), Stats. As long as the local appointment committee meets and takes timely action, which it did, the state board will not intervene. Therefore, it is my opinion that the state board did not err in giving the appointment committee additional time to submit "acceptable" recommendations.
 7. If the State Board becomes aware that members who are in mid-terms but who never did qualify for the representation assigned to them . . . does the State Board have authority to require the position be vacated and a new qualified member appointed?
Under state law, the state board has the authority to establish by rule, criteria and procedures for the review of district board member appointments by the board. Sec. 38.04(15), Stats. The state board also is authorized to "require that district board appointments comply with the provisions of the plan [of representation]." Sec. 38.10(2)(c), Stats. While it is my opinion that these statutory provisions authorize the state board to require appointment of a qualified member at the next available opportunity, I do not believe they can be read broadly enough to encompass removal of a member in mid-term. Such authority is reserved to the appointing body or a court.
DJH:JSM *Page 126