ROBERT C. WEISS AND GWYNNETH F. WEISS, APPELLANTS, v. STATE OF NEVADA; CLARK COUNTY; STATE OF NEVADA BOARD OF EQUALIZATION; NEVADA TAX COMMISSION, ET AL., RESPONDENTS.

No. 11970

May 22, 1980                                   611 P.2d 212

[Rehearing denied July 8, 1980]

*Lionel Sawyer & Collins,* and *Stephen L. Morris,* of Las Vegas, for Appellants.

*Richard Bryan,* Attorney General, and *Brooke A. Nielsen,* Deputy Attorney General, for Respondents State of Nevada, Board of Equalization and Tax Commission.

*Robert J. Miller,* District Attorney, and *Melvin R. Whipple,* Deputy District Attorney, Clark County, for Respondent Clark County.

## OPINION

By the Court, THOMPSON, J.:

The district court affirmed a determination of value of the appellants' properties made by the State Board of Equalization. This appeal challenges that ruling.

In June 1977, Robert Weiss owned 596 apartments located in buildings comprised of four and eight units. The four-unit and eight-unit buildings are identical and contain identical apartments. On June 22, 1977, Weiss purchased an additional six four-unit buildings which were contiguous and identical to the ones he already owned. The purchase price for the 24 additional apartments was $300,000. Six days later the Clark County Assessor determined that the apartments Weiss had just purchased had a value of $373,000. Using that as a basis he then reassessed the 596 units owned before the purchase to arrive at the value for the forthcoming tax year of the 620 units now owned by Weiss.

Mr. Weiss and Gwynneth Weiss own a condominium located in the Regency Towers, Las Vegas, Nevada. Mr. Weiss complains of the value given the apartments, and both of them complain of the value accorded to their condominium.

With regard to the 620 apartments it is the contention of Mr. Weiss that the fair cash value was conclusively established by the purchase of the 24 additional units since it was a purchase of a representative part of the very property in question within days of assessment in an arm's length transaction. With regard to the condominium, the appellants argue that the valuation was based on the asking price of similar but unsold condominiums, resulting in an overvaluation.

District court review of the State Board determination is provided for by NRS 361.420. That court decided that the State Board had utilized accepted methods for determining value, and that the Weisses had not proven by clear and satisfactory evidence that the valuations were unjust and inequitable. This appeal followed.

1. The 620 apartments.

The taxpayer is obliged to show by clear and convincing evidence that the valuation established by the State Board is unjust and inequitable. NRS 361.430; Kelly v. State of Nevada, 91 Nev. 150, 532 P.2d 1029 (1975); Nevada Tax Comm'n v. Southwest Gas Corp., 88 Nev. 309, 497 P.2d 308 (1972). This burden is not met unless the court can find that the Board applied a fundamentally wrong principle, or refused to exercise its best judgment, or that the assessment was so excessive as to give rise to an implication of fraud and bad faith. *Kelly, supra.*

Robert Weiss does not here suggest that the assessments were so excessive as to give rise to an implication of fraud and bad faith, or that the Board refused to exercise its best judgment. He does contend that the Board applied a fundamentally wrong principle when it did not accept the purchase of the 24 additional identical apartments as the sole indicator of value.

Our legislature has directed the assessment of real property at thirty-five percent of its full cash value. NRS 361.225. The person making the assessment is directed to compute value by using three recognized methods for ascertaining value commonly called the cost, market and income approaches to value.[1] These methods are to be utilized if information is available to permit their utilization. The record reveals that the three approaches to value were considered by the State Board since sufficient information apparently was available. Cf. Nevada Tax Comm'n v. Southwest Gas Corp., 88 Nev. 309, 497 P.2d 308 (1972), where two of the three indicators of value were not available and we, therefore, approved the utilization of only the book cost less depreciation indicator.

Robert Weiss would have us read NRS 361.227(1) to apply only in those instances where there has not been an arm's length purchase of a representative part of the very property in

[1]NRS 361.227(1). Any person determining the full cash value of real property shall compute that value by using each of the following factors for which information is available and shall give such weight to each applicable factor as, in his judgment, is proper:

(a) The estimate of the value of the vacant land, plus any improvements made and minus any depreciation computed according to the estimated life of the improvements.

(b) The market value of the property, as evidenced by:

(1) comparable sales in the vicinity;

(2) the price at which the property was sold to the present owner; and

(3) the value of the property for the use to which it was actually put for the fiscal year of assessment.

(c) The value of the property estimated by capitalization of the fair economic income expectancy.

question within days of the assessment. The direction of the statute is not so limited. The second approach to value mentioned in the statute, the market approach, compels the assessor to consider the arm's length purchase to which Weiss refers. The balance of the statute requires the assessor also to utilize the other mentioned approaches to value if information concerning them is available. This was done. In these circumstances we are unable to conclude that the Board applied a fundamentally wrong principle in ascertaining the value of the apartments resulting in an inequity.

2. The condominium.

The condominium owned by the Weisses is on the twenty-sixth floor of the Regency Towers, a twenty-nine-story building. The assessor determined its full cash value to be $84,980. The Weisses argue that the assessor improperly considered the offered but unaccepted purchase prices for the condominiums submitted by the developers. Arguably, this was considered by the assessor only to show that prices of the condominiums increased on the higher floors. In any event, the assessor also presented a list of allegedly comparable sales to support his appraisal. The Weisses did not submit contravening evidence and, therefore, did not meet the taxpayer's burden to show by clear and convincing evidence that the valuation is unjust and inequitable.

Affirmed.

Mowbray, C. J., and Gunderson, Manoukian, and Batjer, JJ., concur.