IMPERIAL PALACE, INC., a Nevada Corporation, Appellant, v. THE STATE OF NEVADA by and Through Its Department of Taxation; COUNTY OF CLARK, NEVADA; and JEAN DUTTON, Clark County Assessor, Respondents.

No. 22490

IMPERIAL PALACE, INC., a Nevada Corporation, Appellant, v. THE STATE OF NEVADA by and Through Its Department of Taxation; COUNTY OF CLARK, NEVADA; and JEAN DUTTON, Clark County Assessor, Respondents.

No. 22909

December 11, 1992 843 P.2d 813

*Nitz, Walton & Hammer,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, *Jeffrey R. Rodefer,* Deputy Attorney General, Carson City; *Rex Bell,* District Attorney and *Zev E. Kaplan,* Deputy District Attorney, Clark County, for Respondents.

## OPINION

*Per Curiam:*

This is a dispute over the taxable value[1] of several multi-million dollar structural improvements to the Imperial Palace Hotel and Casino. The Clark County Board of Equalization, the State Board of Equalization, and the district court upheld the Clark County Assessor's valuations of the improvements. Appellant contends that the Clark County Assessor overvalued the improvements in the 1990-91 and 1991-92 tax years by over thirty million dollars.

### THE FACTS[2]

Appellant Imperial Palace ("Imperial") is the owner of an 8.59 acre parcel of land, with improvements consisting of a casino, a warehouse, a clubhouse, a motel, five hotel towers, and a parking structure (the "Palace") in Las Vegas, Nevada. In late 1989, the Clark County Assessor (the "Assessor") determined

---

[1]NRS 361.043(2) defines "taxable value" as the value of property, other than property of an interstate and intercounty nature, determined in the manner provided in NRS 361.227.

[2]The statement of facts only details the 1990-91 dispute. The relevant facts of the 1991-92 dispute are virtually identical. The legal issues raised in the two disputes are precisely the same.

the 1990-91 taxable value of the Palace to be $151,810,290.00. This figure consists of $7,201,940.00 assessed land value, $136,720,260.00 assessed value of the improvements to the land, and $7,848,090.00 assessed personal property value.

On January 16, 1990, Imperial filed a petition for review of the assessed valuation with the Clark County Board of Equalization (the "County Board"). In the petition, Imperial asked the County Board to review the Assessor's valuation of the motel, the five towers, and the parking structure, arguing that the Assessor had overvalued them by more than thirty million dollars. In determining the taxable value of the Palace improvements, the Assessor had proceeded pursuant to NRS 361.227, utilizing the Marshall and Swift standards ("Marshall and Swift") mandated by NAC 361.128(2). Marshall and Swift provides three methods of calculating replacement costs: the calculator method, the segregated cost method, and the comparative cost indexes and multipliers.[3] *Marshall Valuation Service,* § 1, at 12. In calculating the taxable value of Imperial's improvements, the Assessor used a Marshall and Swift computer program based on the calculator method. Imperial submitted two alternative assessments for the disputed improvements: $62,889,605.00 and $58,256,805.00.[4] In calculating its assessments, Imperial utilized the Marshall and Swift

---

[3]The calculator method contains "average square and cubic foot and square meter costs for various classes, occupancy types, and qualities of buildings together with modifiers for common deviations from the descriptions of the typical buildings listed." *Marshall Valuation Service,* § 1, at 12. The segregated cost method provides the cost per square foot of the major building components. *Id.* The comparative cost tables contain indexes and multipliers by which known historical costs may be converted directly to present-day costs or current costs may be taken back in time. *Id.*

[4]Imperial arrived at its $62,889,605.00 figure in the following manner: It took the actual audited costs of construction of the disputed improvements, added 10% for contractor's profit and overhead, and then applied "trending factors" derived from Marshall and Swift to inflate the adjusted historical costs to a present day equivalent. Imperial increased the resulting figure by an additional 4% "as required by NRS 361.260(5)," and then deducted applicable depreciation in accordance with NRS 361.227(1)(b). Imperial used a different methodology in arriving at the $58,256,805.00 figure: It took the recent (1988-89) actual cost of construction for tower 5, again increased the amount by 10% for contractor's profit and overhead, and again applied Marshall and Swift trending factors. Imperial then allocated the resulting figure to the total area of tower 5 on the basis of square footage. By so doing, Imperial determined that the current cost of construction of tower 5 was $40.40 per square foot. In a similar manner, Imperial derived a current cost of approximately $10.15 per square foot for the parking structure. Imperial multiplied the square footage of the disputed improvements by these cost figures and then deducted depreciation. Imperial calculated the figures that it submitted for the 1991-92 valuation in an identical fashion, except that it increased the 10% and 4% adjustments to 10.5% and 4.5%.

multipliers to inflate the actual audited costs of construction to their present day equivalents.

After a hearing, the County Board denied Imperial's petition but, because of a mistaken classification by the Assessor, accepted the Assessor's recommendation to reduce the assessed value of the improvements to $125,655,200.00.[5] Accordingly, the County Board reduced the total taxable value of the Palace to $140,705,230.00. The disputed improvements (the motel, the five towers, and the parking structure) constitute $96,524,866.00 of the total taxable value of the Palace, as determined by the Assessor.[6]

Imperial appealed the County Board's decision to the State Board of Equalization (the "State Board"). After a hearing, the State Board upheld the County Board's decision denying Imperial's petition. The State Board found, among other things, that the taxable value of the Palace improvements "falls within the mid-range of comparable properties" in Las Vegas.

On June 28, 1990, Imperial filed a petition for judicial review in the Eighth Judicial District Court. The district court upheld the State Board's decision,[7] and this appeal followed.

## DISCUSSION

Under Article 10, Section 1 of the Nevada Constitution, the legislature "shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property . . . except mines and mining claims." The legislature enacted NRS 361.227 for determining the taxable value of real property. With respect to improvements on real property, NRS 361.227(1)(b) provides that an assessor shall appraise them "by subtracting from the *cost of replacement of the improvements* all applicable depreciation and obsolescence." (Emphasis added.) NRS 361.227(5) mandates that "[t]he computed taxable value of any property must not exceed its full cash value."[8] NRS 361.227(5) is inapplicable in

---

[5]At the hearing, the Assessor's representative acknowledged that the Assessor had mistakenly classified the improvements as "Class B" instead of "Class C" and recommended that the County Board reduce the 1990-91 taxable value of the improvements accordingly.

[6]For the 1991-92 valuation, the Assessor valued the Palace at $143,786,059.00, of which the disputed improvements constitute $97,007,490.00.

[7]The County Board, the State Board, and the district court subsequently affirmed the Assessor's 1991-92 assessment.

[8]NRS 361.025 defines "full cash value" as "the most probable price which property would bring in a competitive and open market under all conditions requisite to a fair sale."

the instant case because Imperial does not contend that the taxable value of the Palace improvements exceeded their full cash value.

NRS 361.227(6)(a) requires the Nevada tax commission to establish standards for determining the cost of replacement of improvements.[9] Accordingly, in 1982 the tax commission adopted NAC 361.128, which provides:

> 1. The cost of replacement of an improvement must include all costs for labor, materials, supervision, contractor's profit and overhead, architect's plans and specifications, sales taxes and insurance.
>
> 2. *In determining the costs of an improvement, the county assessor shall:*
>
> (a) For rural buildings, use the standards in the assessor handbook entitled Rural Building Costs adopted by the commission.
>
> (b) *For other improvements, use the standards in the cost manuals, including modifiers of local costs, published through or furnished by the Marshall and Swift Publication Company, as they existed on October 1 of the year preceding the current assessment year, if the executive director approves it for use by county assessors in determining the costs of improvements.* A computer program for determining cost furnished by the Marshall and Swift Publication Company may also be used. Other computer programs for determining cost which are based on costs published by the Marshall and Swift Publication Company may be used with prior approval of the executive director.
>
> 3. If these manuals are not applicable, the county assessor may use the other recognized cost manuals or subscription services with the prior approval of the executive director of the department.
>
> 4. The executive director shall review the standards and modifiers published or furnished by the Marshall and Swift Publication Company as soon as practicable after they become available, to determine their suitability for use by county assessors. If he finds it to be suitable, the executive director shall approve the use of the standard or modifier and notify each county assessor of that approval.

(Emphasis added.) Under NRS 233B.040(1), regulations

---

[9]NRS 361.227(6)(a) provides:

> 6. The Nevada tax commission shall by regulation establish:
> (a) Standards for determining the cost of replacement of improvements of various kinds.

"[a]dopted and filed in accordance with the provisions of [NRS Chapter 233B]" have the force of law.

Finally, NRS 361.345(1), which governs the powers of the county board of equalization, provides:

> [T]he county board of equalization may determine the valuation of any property assessed by the county assessor, and may change and correct any valuation found to be incorrect either by adding thereto or by deducting therefrom such sum as is necessary to make it conform to the taxable value of the property assessed, whether that valuation was fixed by the owner or the county assessor.[10]

The dispute here centers on the County and State Boards' method of determining cost of replacement. As previously mentioned, Marshall and Swift provides three methods of calculating replacement costs: the calculator method, segregated cost method, and comparative cost indexes and multipliers. *Marshall Valuation Service,* § 1, at 12. Imperial does not specifically dispute the Assessor's use of Marshall and Swift valuation methods. In fact, in determining the taxable value of its improvements, Imperial employed Marshall and Swift multipliers to update its actual audited costs of construction. However, Imperial generally contends that NRS 361.227(1)(b) and NRS 361.345(1) require the County and State Boards to adjust the assessed valuations for improvements to reflect the *actual* cost of replacement, less depreciation, and that the district court erred in failing to require the County and State Boards to adjust the Assessor's valuations. Specifically, Imperial disputes the Assessor's use of the calculator method instead of the actual cost of replacement. The State, on the other hand, contends that the Assessor properly calculated the taxable value of the Palace's improvements by utilizing the calculator method in the cost manuals published by Marshall and Swift. According to the State, the calculator method, which is based on average construction costs of typical buildings within the applicable classification, ensures a uniform

---

[10]The State argues that if an assessor computes the taxable value by a method prescribed by law and if the taxable value does not exceed the property's full cash value, the taxpayer cannot challenge the valuation. We disagree with this position. If an assessor utilizes a correct method pursuant to NRS 361.227 but inaccurately calculates the taxable value, a taxpayer may challenge an assessor's incorrect valuation under NRS 361.345 regardless of whether the erroneously calculated taxable value exceeds the full cash value. If, for some reason, the State Board fails to correct an assessor's error in calculation pursuant to NRS 361.345 and the result is highly inequitable, this court would, in the interests of justice and fundamental fairness, remand the case to the district court for further remand to the county board of equalization for reconsideration of its decision.

and equal rate of assessment as mandated by Article 10, Section 1 of the Nevada Constitution.

*NRS 361.227(1)(b)*

In reviewing petitions for judicial review under NRS 361.430, determinations of the State Board are presumed valid. Washoe County v. John A. Dermody, Inc., 99 Nev. 608, 611, 668 P.2d 280, 282 (1983). To prevail, Imperial must "show by clear and convincing evidence that the valuation established by the State Board is unjust and inequitable." Weiss v. State of Nevada, 96 Nev. 465, 467, 611 P.2d 212, 214 (1980); NRS 361.430.[11] Imperial does not satisfy this burden "unless the court finds that the [S]tate [B]oard applied a fundamentally wrong principle, or refused to exercise its best judgment, or that the assessment was so excessive as to create an implication of fraud and bad faith." *Weiss,* 96 Nev. at 467, 611 P.2d at 214.

Imperial does not suggest in the instant case that the assessments were so excessive as to give rise to an implication of fraud and bad faith. Imperial does contend that the Board applied a fundamentally wrong principle and that the Board refused to exercise its best judgment.

Imperial first contends that the State misconstrued NRS 361.227(1)(b) and, in doing so, applied a fundamentally wrong principle. According to Imperial, "taxable value," as used in NRS 361.227(1)(b), refers to the *actual* replacement cost of the improvements, as opposed to the *estimates* of replacement cost used in the Marshall and Swift calculator method. Thus, Imperial contends that although the Assessor may initially use the Marshall and Swift calculator method to estimate the replacement cost of an improvement, where the taxpayer establishes by clear and convincing evidence that the Assessor's estimate is materially inaccurate, unjust, and inequitable, the Assessor's estimate must yield to the taxpayer's documented actual replacement cost. Imperial notes that NRS 361.345(1) authorizes the County and State Boards to change and correct erroneous valuations by the Assessor. Imperial argues that the Assessor's estimates in the

---

[11]NRS 361.430 provides:

Burden of proof on plaintiff in action brought under NRS 361.420. In every action brought under the provisions of NRS 361.420, the burden of proof shall be upon the plaintiff to show by clear and satisfactory evidence that any valuation established by the Nevada tax commission or the county assessor or equalized by the county board of equalization or the state board of equalization is unjust and inequitable.

instant case are inaccurate, unjust and inequitable, and that the evidence submitted by Imperial clearly and convincingly established the actual replacement cost of the Palace improvements.

Imperial asserts that its interpretation accords with the legislative intent underlying NRS 361.227(1)(b). The legislature amended NRS 361.227 in 1981 by passing Senate Bill 69 ("SB 69"). *See* 1981 Nev. Stat. 788-89. On April 11, 1981, the Senate and Assembly Taxation Committees held a joint hearing to discuss, among other things, SB 69. At this hearing, copies of a handout explaining SB 69 were distributed. This handout states, in relevant part:

> 1. Homes, buildings and other improvements to realty are to be appraised only by the *actual* labor and material costs to replace the existing structures. The appraiser must also reduce that replacement cost value by any depreciation or obsolescence factors that are applicable to the existing structure due to its age and condition. Comparable sales in the vicinity will no longer be considered in the determination of value and property owners will not see their values escalate merely because a neighbor sells his home for an inflated price.

(Emphasis added.) Based on the language in this handout, Imperial contends that actual replacement cost is the correct method of valuation of its improvements.

"When the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it." City Council of Reno v. Reno Newspapers, 105 Nev. 886, 891, 784 P.2d 974, 977 (1989). Notwithstanding the "actual cost" language in the SB 69 handout, NRS 361.227(1)(b) refers only to "cost of replacement"; there is simply no express language in NRS 361.227 or NAC 361.128 which suggests that an assessor must only use the Marshall and Swift calculator method if the actual costs incurred by the taxpayer in constructing improvements are unavailable. Moreover, in authorizing the Nevada tax commission to establish standards for determining the cost of replacement of improvements in NRS 361.227(6)(a), the legislature did not require the tax commission to use actual cost of replacement as the standard for valuing improvements.

Courts afford great deference to an administrative body's interpretation of a statute that is within the language of the statute. Clark Co. Sch. Dist. v. Local Gov't, 90 Nev. 442, 530 P.2d 114 (1974). In the instant case, the State's interpretation of cost of replacement conforms to the language of NRS 361.227. Additionally, NRS 361.227 took its current form in 1981; the legisla-

ture enacted NAC 361.128 in 1982. In subsequent years, the legislature has not changed the methodology set forth in this statute and regulation. This legislative acquiescence in the State's reasonable interpretation of NRS 361.227 indicates that the interpretation is consistent with legislative intent. Oliver v. Spitz, 76 Nev. 5, 348 P.2d 158 (1960).

Imperial's position fails for yet another reason. Aside from the administrative difficulties that would result from adopting this position (among other things, assessors would need to investigate and verify the figures submitted by thousands of taxpayers), an assessor's use of the actual cost of replacement would cause unequal taxation. As the State observes, cost of replacement can vary widely depending on the contractor and whether an owner-builder performed the construction. Consequently, otherwise comparable properties could have significantly unequal property tax burdens. The Marshall and Swift calculator method ensures the uniform and equitable application of Nevada's taxing statutes.

On several previous occasions, this court has reviewed cases involving taxpayers' appeals of State Board valuations pursuant to NRS 361.227. In Weiss v. State of Nevada, 96 Nev. 465, 611 P.2d 212 (1980), a taxpayer appealed the district court's order affirming the State Board's determination of real property value. The taxpayer, who owned several apartment buildings, purchased additional apartment buildings, which were contiguous and identical to the ones that he already owned. *Id.* at 466, 611 P.2d at 213. The purchase price of the additional buildings was $300,000. *Id.* The assessor determined that the additional buildings had a taxable value of $373,000. *Id.* Using this figure as a basis, the assessor reassessed the apartment buildings that the taxpayer previously owned at the same value as the recently purchased buildings. *Id.* The taxpayer argued to the State Board that the recent purchase price conclusively established the full cash value for tax purposes. *Id.* The district court decided "that the State Board had utilized accepted methods for determining value, and that the [taxpayer] had not proven by clear and satisfactory evidence that the valuations were unjust and inequitable." *Id.,* 611 P.2d at 214.

The 1980 version of NRS 361.227(1) directed the assessor to compute taxable value by using three methods—costs, market, and income approaches.[12] *Id.* at 467, 611 P.2d at 214. The statute

---

[12]The 1980 version of NRS 361.227(1) provided for the taxation of real property and its improvements based upon the full cash value using cost, market and income approaches. *Weiss,* 96 Nev. at 467 n.1, 611 P.2d at 214 n.1. The current version of NRS 361.227(1)(b) requires that an assessor determine the taxable value of improvements by subtracting applicable depreciation and obsolescence from the cost of replacement.

commanded the assessor to utilize these methods if he or she possessed the pertinent information. *Id.* This court noted that the State Board considered the three approaches to value because sufficient information was available. Because the statute authorized the assessor to consider other approaches to value than merely the recent purchase price if the information was available, this court concluded that the Board had not applied a fundamentally wrong principle in determining the value of the apartments. *Id.*

In Washoe County v. Golden Road Motor Inn, 105 Nev. 402, 777 P.2d 358 (1989), this court addressed the issue of whether the recent sale price of the subject property was prima facie evidence of the property's taxable value. This court found that as long as the State Board used an appropriate method of valuation pursuant to NRS 361.227, it did not apply a fundamentally wrong principle. *Id.* at 406, 777 P.2d at 360-61.

In contrast to the *Weiss* and *Golden Road Motor Inn* cases, the instant case does not involve an assessor's use of a recent purchase or sale price of property to determine taxable value. Moreover, *Weiss* involved the 1980 version of NRS 361.227(1), which set forth a different scheme for valuing improvements than that prescribed in the current form of the statute. In *Golden Road Motor Inn,* the dispute involved the taxable valuations of *real property* rather than improvements, and NRS 361.227 treats the two types of property differently.

Although these cases can be distinguished from the instant case on the facts, their holdings are instructive. Specifically, these cases are based on the proposition that the State Board is permitted to use any method to determine taxable value that is prescribed by law. In the instant case, NAC 361.128(2) required the State Board to use the Marshall and Swift standards to determine the cost of replacement of the improvements. Accordingly, the Assessor used the calculator method from the Marshall and Swift cost manuals to determine the taxable value of Imperial's improvements. The Assessor had the option of calculating the value of the improvements using the multipliers in the Marshall and Swift cost manuals to update historical actual costs of construction. However, the Assessor chose the calculator method. In Washoe Co. v. John A. Dermody, Inc., 99 Nev. 608, 612, 668 P.2d 280, 282 (1983), this court stated:

> the district court shall not substitute its judgment for that of the administrative agency as to the weight of evidence on questions of fact. Further, the district court should not foreclose the exercise of the administrative agency's independent judgment on matters within its competence. This is particularly true in light of the circumstances of the instant

case, given that there is a specific statutory requirement that the State Board be composed of members with a particular expertise in valuing property.

(Citations omitted.) This court has held that as long as the State Board used an appropriate method of valuation pursuant to NRS 361.227, it did not apply a fundamentally wrong principle. *Golden Road Motor Inn,* 105 Nev. at 406, 777 P.2d at 360-61. In the instant case, the Assessor properly applied the Marshall and Swift calculator method, which is authorized pursuant to NRS 361.227, to determine the cost of replacement of Imperial's improvement.[13]

## *Exercise of judgment*

Imperial next contends that the Assessor, the County Board, and the State Board blindly applied the Marshall and Swift standards, and therefore refused to exercise their best judgment. According to Imperial, these State entities should have discarded the Marshall and Swift calculator method in favor of the actual audited construction figures supplied by Imperial's witnesses, a contractor and an accountant.

According to the Marshall and Swift classification system, the Palace improvements are categorized as "Class C."[14] Imperial's contractor testified that significant cost differentials exist within the "Class C" category of construction, and that the Assessor completely ignored those differentials in applying Marshall and Swift. Specifically, the contractor testified that the cost of construction of a "Class C" improvement can be substantially reduced if the height of the structure is limited to approximately nineteen stories, as is the case with the Palace improvements.

Imperial's argument fails because the calculator method takes into account the cost differentials arising from varying number of stories. The Marshall and Swift cost manuals state that the calculator method specifically addresses the cost differentials arising from the number of stories as follows:

---

[13]The district court found that "[t]he Nevada statutes and regulations do not provide for the alternative method of using the actual or owner's cost of replacement to determine taxable value." This finding of fact is incorrect because NAC 361.128(2) provides for an assessor's use of Marshall and Swift standards, which includes a method for updating actual historical costs to present day equivalents. However, in the instant case, the Assessor used the calculator method. Based on the above discussion, we find that the Assessor correctly used this method.

[14]Marshall and Swift groups improvements into one of five classifications, depending upon the type of construction.

> The number of stories in a high-rise building will make some difference in cost. As the number of stories increase, additional cost is incurred in raising materials, equipment and personnel to upper levels, and in some cases, wages will have a high rise increment. *Also as the number of stories increases, structural frame members become larger to support the higher loads and stresses inherent in a taller building. Both the Calculator and the Segregated Cost Methods have appropriate modifications to adjust the basic costs for differences caused by the number of stories.*

*Marshall Valuation Service,* § 3, at 5 (emphasis added). Furthermore, Imperial has failed to point out any specific errors in the Assessor's calculations of the taxable value of the improvements under the "Class C" category.[15] Thus, there is no evidence that the Assessor, the County Board, and the State Board blindly applied the Marshall and Swift standards, and therefore refused to exercise their best judgment.

*Fair market value*

Finally, according to Imperial, although NRS 361.227(1)(a) permits assessors to use a "full cash value" analysis in determining the taxable value of land,[16] this analysis may be applied to improvements only when a taxpayer challenges his or her assessment under NRS 361.227(5), which states:

> The computed taxable value of any property must not exceed its full cash value. Each person determining the taxable value of property shall reduce it if necessary to comply with this requirement. A person determining whether taxable value exceeds full cash value or whether obsolescence is a factor in valuation may consider:
> (a) Comparative sales, based on prices actually paid in market transactions.

---

[15]In its findings of fact, the State Board found: "The evidence presented indicates that the assessor properly calculated the improvement valuation using the Marshall and Swift calculator method, pursuant to NRS 361.227(1)(b) and NAC 361.128."

[16]NRS 361.227(1)(a) provides:
1. Any person determining the taxable value of real property shall appraise:
(a) The full cash value of:
(1) Vacant land by considering the uses to which it may lawfully be put, any legal or physical restrictions upon those uses, the character of the terrain, and the uses of other land in the vicinity.
(2) Improved land consistently with the use to which the improvements are being put.

(b) A summation of the estimated full cash value of the land and contributory value of the improvements.

(c) Capitalization of the fair economic income expectancy or fair economic rent.

A county assessor is required to make the reduction prescribed in this subsection if the owner calls to his attention the facts warranting it, if he discovers those facts during physical reappraisal of the property or if he is otherwise aware of those facts.

Imperial contends that because it never claimed that the taxable value of the Palace improvements exceeded their full cash value, the County and State Boards applied a fundamentally wrong principle by allowing fair market value, or "full cash value," considerations to influence their determination of the taxable value of the improvements in issue.

Again Imperial's argument is unconvincing. Although members of the State and County Boards did inquire into and consider the fair market value of the Palace, we conclude that the members were obligated to do so to ensure that the taxable value set by the Assessor did not exceed the full cash value of the disputed improvements. *See* NRS 361.227(5). Moreover, even where, as here, a taxpayer concedes that the taxable value does not exceed the full cash value, we conclude that a comparison of taxable value to full cash value aids in determining whether an assessment is equitable.

## CONCLUSION

In summary, we conclude that appellant has failed to show by clear and convincing evidence that the valuations of the Palace improvements are unjust and inequitable; that is to say, appellant has failed to show that the State Board applied a fundamentally wrong principle or refused to exercise its best judgment, or that the valuation was so excessive as to create an implication of fraud and bad faith. Washoe County v. Golden Road Motor Inn, 105 Nev. 402, 405, 777 P.2d 358, 360 (1989). As long as the State Board used an appropriate method of valuation pursuant to NRS 361.227, it did not apply a fundamentally wrong principle. *Golden Road Motor Inn,* 105 Nev. at 406, 777 P.2d at 360-61. In the instant case, the Assessor properly applied the Marshall and Swift calculator method, which is authorized pursuant to NRS 361.227, to determine the cost of replacement of Imperial's improvements.

Accordingly, we affirm the judgment of the district court.