134 Nev., Advance Opinion 39

# IN THE SUPREME COURT OF THE STATE OF NEVADA

MONTAGE MARKETING, LLC, F/K/A
MONTAGE MARKETING
CORPORATION, A DELAWARE
LIMITED LIABILITY COMPANY,
Appellant,
vs.
WASHOE COUNTY EX REL. WASHOE
COUNTY BOARD OF EQUALIZATION;
AND WASHOE COUNTY ASSESSOR
JOHN WILSON,
Respondents.

No. 59063

FILED

MAY 31 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in a property tax matter. First Judicial District Court, Carson City; James Todd Russell, Judge.

*Affirmed.*

Maupin, Cox & LeGoy and Rick R. Hsu and Debra O. Waggoner, Reno, for Appellant.

Christopher J. Hicks, District Attorney, and Herbert B. Kaplan, Deputy District Attorney, Washoe County, for Respondents.

BEFORE CHERRY, HARDESTY and PARRAGUIRRE, JJ.

18-20689

## *OPINION*

By the Court, HARDESTY, J.:

In this appeal, we consider the appropriate method for assessing the taxable value of fully developed but unsold condominium units held by the developer. This case arises from a decision by the State Board of Equalization finding that the county assessor properly assessed each unsold condominium unit based on its retail price. Appellant Montage Marketing, LLC, contends that, because the condominium building qualifies as a subdivision, the unsold condominium units instead should have been valued together as a single unit and discounted to determine the net sellout or wholesale value to a single buyer, which would result in a significantly lower assessment value.

This appeal requires us to interpret two statutory provisions: NRS 361.227(2)(b), which pertains to valuation of parcels in a qualified subdivision, and NRS 361.227(5)(c), which permits the "discounted cash flow" method to be used for assessing the full cash value of real property. We conclude that neither of these statutory provisions required the county assessor to value the condominium units as a single unit or to apply the discounted cash flow method to determine their full cash value. We thus affirm the district court's order denying judicial review of the State Board of Equalization's decision.

### *FACTS AND PROCEDURAL HISTORY*

This appeal involves tax assessment valuations for the tax years 2009-2010 and 2010-2011 for the Montage, a 21-story luxury condominium development located in downtown Reno in Washoe County. The condominium building was converted from a hotel and subdivided into 376 residential units with 11 different floor plans. The individual

residential units were fully developed by February 2009, and the first units were sold to individual purchasers in March 2009. As of May 2009, 30 out of the 376 units were sold, and only 3 more units were sold as of February 2010. The unsold units remained under the common ownership of appellant Montage Marketing, LLC (Montage) and continued to be marketed as individual residential units for sale.

The Washoe County Assessor (Assessor) determined the taxable value of the unsold condominiums owned by Montage to be $86,804,500 for the 2009-2010 tax year and $71,120,370 for the 2010-2011 tax year. In assessing the condominiums, the Assessor followed the process prescribed under NRS 361.227. First, the Assessor calculated the full cash value of the land of each condominium. Because the condominium building qualified as a subdivision under NRS 361.227(2)(b), the Assessor applied a discount to the value of the land based on its expected absorption period—the number of years it would take for all of the units to be sold or otherwise absorbed into the market. Next, the Assessor calculated the taxable value of the improvements of each condominium. Then, to ensure that the taxable value of each condominium did not exceed its full cash value, the Assessor utilized the sales comparison method permitted by NRS 361.227(5) and reduced the taxable value of each condominium to 90 percent of its list price.

Montage sought review with the Washoe County Board of Equalization, arguing that the assessed taxable value of the unsold condominiums exceeded their full cash value. The County Board upheld the Assessor's valuations, and Montage appealed that decision to the State Board of Equalization (the State Board).

At the hearing before the State Board, Montage contended that the Assessor should have valued the condominium units collectively as one

unit to derive a wholesale or net sellout value, which is what the unsold condominiums would be worth if sold in bulk to a single investor. Montage presented a report from its own appraiser, which calculated the full cash value of the unsold condominiums at $40,350,000 for the 2009-2010 tax year and $24,000,000 for the 2010-2011 tax year based on the net sellout values. The appraiser's report explained that these values were reached by first assessing the aggregate retail prices of all the condominium units and then, because the units would likely not be sold for a period of years, applying a discounted cash flow analysis to determine the present value of the condominium units to a single buyer. Montage argued that, because the condominium building qualified as a subdivision under NRS 361.227(2)(b), the Assessor was required to view the condominiums as a single unit and to discount the value of the entire property—both land *and* improvements—to determine the full cash value.

The Assessor argued that Montage's method of appraisal was improper because Montage was marketing each condominium to individual buyers and not to a single investor and thus the proper valuation method was what each condominium was worth if sold individually. The Assessor agreed that the condominiums qualified as a subdivision under NRS 361.227(2)(b), but asserted that the subdivision discount only applied to land and not to the valuation of any improvements on the land.

The State Board upheld the Assessor's valuations. The State Board acknowledged that under NRS 361.227(2)(b), a subdivision discount methodology must be used to assess the taxable value of parcels that comprise a qualified subdivision. The State Board found that the Assessor had appropriately applied a subdivision discount of 50 percent to the land

and that both the land and improvements had been appraised at the proper taxable value for both tax years.

Montage filed a petition for judicial review in the district court. The district court upheld the State Board's decision, and this appeal followed.

## DISCUSSION

"In reviewing orders resolving petitions for judicial review that challenge State Board decisions," this court presumes that the State Board's determinations are valid. *State Bd. of Equalization v. Bakst*, 122 Nev. 1403, 1408, 148 P.3d 717, 721 (2006). The taxpayer has the burden of proof and can overcome this presumption of validity only by presenting clear and satisfactory evidence that the tax valuation is "unjust and inequitable." *Id.* at 1408-09, 148 P.3d at 721. To satisfy this requirement, the taxpayer must demonstrate that the State Board applied "a fundamentally wrong principle," the Board refused to exercise its best judgment, or the assessment was so excessive as to necessarily imply fraud and bad faith. *Canyon Villas Apartments Corp. v. State*, 124 Nev. 833, 838, 192 P.3d 746, 750 (2008).

On appeal, Montage argues that the State Board applied a fundamentally wrong principle by upholding the Assessor's valuations of the unsold condominiums based on the retail list price of each condominium. Montage contends that the unsold condominiums should have been valued collectively as one unit and discounted to derive a wholesale value. Montage contends that this approach is expressly contemplated by the subdivision exception in NRS 361.227(2)(b), in conjunction with the discounted cash flow method permitted under NRS 361.227(5)(c). To resolve Montage's arguments, we first consider Nevada's real property tax assessment scheme and how the Assessor appraised the real property in this case. We then

Supreme Court
OF
Nevada

(O) 1947A

address whether Nevada's tax assessment scheme required the unsold condominiums held by Montage to be valued collectively as a single unit and discounted to wholesale value.

*Nevada's tax assessment scheme and the Assessor's appraisal*

NRS Chapter 361 and the corresponding regulations set forth a scheme by which real property must be assessed. In assessing the taxable value of real property, county assessors must separately appraise two components of the property: (1) the land, and (2) any improvements on the land. NRS 361.227(1). Generally, each parcel of land must be considered a single unit for tax purposes and be separately valued and assessed. *See* NRS 361.227(2). However, NRS 361.227 provides several exceptions to this rule:

> 2. The unit of appraisal must be a single parcel unless:
>
> (a) The location of the improvements causes two or more parcels to function as a single parcel;
>
> (b) The parcel is one of a group of contiguous parcels which qualifies for valuation as a subdivision pursuant to the regulations of the Nevada Tax Commission; or
>
> (c) In the professional judgment of the person determining the taxable value, the parcel is one of a group of parcels which should be valued as a collective unit.

It is undisputed by the parties that the condominium building is a qualified subdivision for purposes of NRS 361.227(2)(b). Subsection 6(d) directs the Nevada Tax Commission to establish regulations for the valuation of parcels in a subdivision, and pursuant to that directive, the Tax Commission adopted NAC 361.1295, which sets forth the valuation methods that an assessor may use when valuing the land within a qualified subdivision. In relevant part, NAC 361.1295 directs the county assessor to

Supreme Court
of
Nevada

(O) 1947A

calculate "the estimated retail selling price of all parcels in the subdivision which are not sold, rented or occupied, reduced by the percentage specified for the expected absorption of the parcel[,]" and then allocate that taxable value to each of the parcels. NAC 361.1295(1)(c), (2). The regulation further provides that the "taxable value of any improvements made within a qualified subdivision" should be calculated pursuant to NRS 361.227.

After determining the taxable value of the property, the assessor must then ensure that the taxable value does not exceed the full cash value of the property. NRS 361.227(5). "Full cash value" is defined as "the most probable price which property would bring in a competitive and open market under all conditions requisite to a fair sale." NRS 361.025. In determining whether a property's taxable value exceeds its full cash value, the assessor may utilize three alternative methods: (1) a comparable sales analysis; (2) a summation of the land and any improvements; or (3) "[c]apitalization of the fair economic income expectancy of fair economic rent, or an analysis of the discounted cash flow." NRS 361.227(5). If, after utilizing one of these methods, the assessor determines the taxable value exceeds the full cash value, the assessor must reduce the taxable value of the property accordingly. NAC 361.131.

With respect to Montage's unsold condominiums, the Assessor separately appraised the land and the improvements for each of the tax years pursuant to NRS 361.227 and the regulations. First, because the condominium building was a qualified subdivision, the Assessor applied a 50-percent discount to the value of the land based on an expected absorption period of ten or more years for the unsold units, and then allocated that amount to each of the condominium units, pursuant to NAC 361.1295. The Assessor next calculated the improvements for each condominium pursuant

SUPREME COURT
OF
NEVADA

(O) 1947A

7

to NRS 361.227(1). The Assessor then utilized the comparable sales approach, also known as the market approach, to determine the full cash value of each condominium, pursuant to NRS 361.227(5). To ensure the taxable value did not exceed the full cash value, the Assessor applied obsolescence to reduce the taxable value of each unsold condominium to 90 percent of its list price.

*The subdivision exception in NRS 361.227(2)(b)*

Montage contends that the plain language of NRS 361.227(2)(b) requires the unsold condominium units to be appraised as a single unit because they are part of a qualified subdivision. Montage maintains that the legislative history of the statute supports this position and demonstrates that the State Board misconstrued NRS 361.227(2)(b).

Appeals involving interpretation of a statute or regulation present questions of law that we review de novo. *See State v. Bakst,* 122 Nev. 1403, 1409, 148 P.3d 717, 721 (2006). When reviewing a statute, we look first to the language of the statute and, if the language is plain and unambiguous, we give effect to that language and do not look beyond it. *Silver State Elec. Supply Co. v. State, Dep't of Taxation,* 123 Nev. 80, 84, 157 P.3d 710, 713 (2007). Otherwise, we will look to legislative history and rules of construction to determine the meaning of the statute. *Id.* at 84-85, 148 P.3d at 713. We will "afford great deference to an administrative body's interpretation of a statute that is within the language of the statute." *Imperial Palace, Inc. v. State,* 108 Nev. 1060, 1067, 843 P.2d 813, 818 (1992).

NRS 361.227(2)(b) provides that "[t]he unit of appraisal must be a single parcel unless: . . . [t]he parcel is one of a group of contiguous parcels which qualifies for valuation as a subdivision pursuant to the regulations of the Nevada Tax Commission." Montage reads NRS 361.227(2)(b) as mandating that the unsold condominiums be appraised

 

collectively as one unit to determine a wholesale value. Thus, under Montage's interpretation of the statute, the Assessor should have applied a discount to the entire subdivision—i.e., both the land and the improvements of the unsold condominiums—which would have yielded the value of the condominiums collectively as a single unit.

We disagree with Montage's interpretation of NRS 361.227(2)(b). A careful reading of the statute reveals that it does not expressly require that an entire subdivision be appraised as a single unit. Unlike the two other exceptions to the single parcel rule in NRS 361.227(2), which specify when two or more parcels "function as a single parcel" or "should be valued as a collective unit," the subdivision exception in 2(b) contains no such language. Nor does the statute state how parcels in a subdivision should be valued. Instead, when subsection 2(b) is read in conjunction with subsection 6(d), it is clear that the Legislature granted the Tax Commission authority to determine how parcels in a qualified subdivision should be valued. And the Tax Commission adopted NAC 361.1295, which allows a discount to the value of the land, but not the improvements, of each individual parcel that makes up a subdivision.

Montage does not specifically argue that NAC 361.1295 is invalid or conflicts with NRS 361.227(2)(b). *See* NRS 233B.040(1) (providing that regulations "adopted and filed in accordance with the provisions of [NRS Chapter 233B] have the force of law"); NRS 233B.090 (stating that there is a rebuttable presumption that a regulation by an administrative agency is valid). And, in any event, the Tax Commission's subdivision regulation is consistent with the statute's requirement that the Commission establish criteria for valuing subdivisions. *See Imperial Palace*, 108 Nev. at 1067, 843 P.2d at 818 (affording great deference to the

 

Tax Commission's interpretation when it is within the statutory language). Furthermore, NAC 361.1295 was adopted in 1988, and since then, the Legislature has not modified NRS 361.227(2)(b). *See Silver State Elec. Supply Co.*, 123 Nev. at 85, 157 P.3d at 713 (noting that "the Legislature's acquiescence to the Tax Commission's reasonable statutory interpretation by not modifying the statute indicates that the interpretation accords with legislative intent").

Even if we were to resort to the statute's legislative history, as Montage urges us to do, we find no clear legislative intent for parcels in a fully developed subdivision to be appraised collectively as a single unit or to be discounted in their entirety. The legislative history shows that the Legislature passed subsection 2(b) to benefit subdivision developers who hold many unsold parcels for an indefinite time due to economic downturn. Hearing on A.B. 291 Before the Assembly Comm. on Taxation, 64th Leg. (Nev., April 7, 1987). The intent in creating an exception for parcels in subdivisions was to allow assessors to take into account the carrying costs incurred by developers over the property's absorption period—the amount of time it would take for all the parcels to sell—and to apply a discount to arrive at the present value of the property. *Id.* This method of valuation is commonly known as the developer's discount method or the subdivision development approach to value. It is not clear, however, that the Legislature intended this subdivision discount to apply to both the land and improvements of parcels in a subdivision. In fact, the legislative history indicates that this discount was intended to apply only to undeveloped

subdivisions.[1] *See* Hearing on A.B. 291 Before the Assembly Comm. on Taxation, 64th Leg. (Nev., April 23, 1987) (statement by Dick Franklin, Assessors Association, that "for the most part, land only was involved and depreciation would not be a factor. . . . They are dealing primarily with vacant land. Once property is used by the developer, it would drop out of this situation.").

Indeed, applying the subdivision discount only to undeveloped land would comport with how other jurisdictions generally understand or utilize the subdivision or development approach to valuation.[2] *See, e.g., Hixon v. Lario Enters., Inc.*, 892 P.2d 507, 512 (Kan. 1995) (concluding that the developer's discount method does not apply to "subdivided property, where streets and curbs have been laid, utilities have been installed, and homes have been built on the property"); *Edward Rose Bldg. Co. v. Indep. Tp.*, 462 N.W.2d 325, 334 (Mich. 1990) (holding that a developer's discount did not apply to land that had been subdivided and improved and marketed

---

[1]Montage also relies heavily on an opinion issued by the Nevada Attorney General's Office in April 1987 to argue that unsold subdivision parcels must be appraised collectively as one unit. *See* 87-8 Op. Att'y Gen. (1987). Montage's reliance on that opinion is misplaced for several reasons. First, because the language of NRS 361.227(2)(b) is plain and unambiguous, we may not go beyond that language to determine its meaning. Second, nothing in the opinion suggests that parcels must be appraised collectively once they are fully developed as residential units and marketed to individual buyers, and thus the opinion does not provide clear support for Montage's position. Third, regardless of the import of the Attorney General's Opinion, it is not binding on this court. *Miller v. Burk*, 124 Nev. 579, 594 n.54, 188 P.3d 1112, 1122 n.54 (2008).

[2]The parties do not challenge the application of the subdivision discount to the land of the unsold condominiums; thus, we make no decision as to whether such a discount is appropriate here.

on an individual lot basis); *First Interstate Bank of Or. v. Dep't of Revenue*, 760 P.2d 880, 883 (Or. 1988) (holding that the developer's discount method was not a permissible method of valuation for an established subdivision); *see also* Appraisal Institute, *The Appraisal of Real Estate* 342-43 (12th ed. 2001) (explaining that subdivision development analysis is a technique for valuing vacant land and determining the bulk sale value of a proposed subdivision).

Because the plain language of NRS 361.227(2)(b) does not require parcels in a subdivision to be appraised collectively as a single unit, we conclude the statute did not preclude the Assessor from appraising each condominium unit on an individual basis. Furthermore, in appraising the taxable value of each unit, the Assessor was permitted by NAC 361.1295 to apply a subdivision discount to the land but not to the improvements. Thus, Montage fails to demonstrate that the State Board misconstrued NRS 361.227(2)(b) or otherwise applied a fundamentally wrong principle.

*The discounted cash flow analysis under NRS 361.227(5)(c)*

Montage argues that the State Board's refusal to consider the discounted cash flow method in determining the full cash value of the unsold condominium units resulted in an unjust and inequitable taxable value in contravention of NRS 361.227(5). Montage contends that it is clear from the legislative history of NRS 361.227(5)(c) that the discounted cash flow method "is used in subdivision valuation to ascertain the true value based on holding costs and absorption—a wholesale value."

This argument raises the question of whether the discounted cash flow method for valuing property is an appropriate method for assessing the taxable value of condominium units marketed to individual buyers. We have never addressed the discounted cash flow analysis in NRS 361.227(5)(c) before, nor have we considered the proper methodology for



assessing unsold condominium units held by a developer of a condominium building. NRS 361.227(5) sets forth three alternative methods that an assessor may use in determining whether the full cash value exceeds the taxable value: (a) comparable sales analysis; (b) a summation of the values of the land and any improvements; or (c) "[c]apitalization of the fair economic income expectancy or fair economic rent, or *an analysis of the discounted cash flow*." The discounted cash flow analysis is an income capitalization technique that involves deducting costs and expenses from the anticipated gross sales price of the property and then applying a discount based on the expected absorption period to arrive at the property's present value. Appraisal Institute, *supra*, at 343.

The "discounted cash flow" language was added to NRS 361.227(5)(c) in 1999 through Assembly Bill (A.B.) 601. Hearing on A.B. 601 Before the Assembly Comm. on Taxation, 70th Leg. (Nev., April 8, 1999). In addition to amending subsection 5(c) to include that language, A.B. 601 amended subsection 2 to include the third exception to the rule that a unit of appraisal is a single parcel—when "the parcel is one of a group of parcels which should be valued as a collective unit" in the appraiser's professional judgment. *Id.* The legislative history shows that the Legislature enacted these provisions together to provide the same benefit to owners of certain contiguous parcels, such as a developer with vacant land in a planned community, that was currently being provided to developers of subdivisions. *Id.* At a hearing on A.B. 601, Mark Schofield, the Clark County Assessor, explained: "We currently use a developer's subdivision discount, where we discount the value of the property, determined by the number of years it will take to build that property up . . . . This essentially would employ that same theory in valuing vacant

 

parcels. You are giving them that benefit even though they are not subdivided." *Id.*

Montage relies on this language to contend that it is clear that the State Board has historically used the discounted cash flow method in subdivision valuation, was expressly vested with that authority by A.B. 601, and should have applied that method here to determine that the taxable value exceeded the full cash value. We disagree. The legislative history indicates that the discounted cash flow analysis is similar to the subdivision discount, in that it provides for a discount due to the number of years that it will take for property to be developed and sold. However, nothing in the legislative history supports Montage's contention that the discounted cash flow analysis is the appropriate method for assessing the full cash value of fully developed subdivisions such as the condominiums at issue here. In fact, the legislative history suggests that the discounted cash flow method is intended to apply only in the valuation of non-subdivided vacant parcels. Furthermore, the discounted cash flow method was added to NRS 361.227(5)(c) more than ten years after the subdivision rule was enacted. Thus, to the extent that Montage suggests that the Legislature had always allowed the discounted cash flow method to be used to assess the full cash value of developed subdivisions, this position is not supported by the statutory language or the legislative history.

Montage alternatively urges this court to find that the discounted cash flow method was appropriate because Montage purchased the condominium project as an investor with the intent to make money from the project, and thus the condominiums should be treated as income-producing property rather than as individual residential units. Montage relies on *Canyon Villas Apartments Corp. v. State*, 124 Nev. 833, 843, 192

P.3d 746, 754 (2008), to argue that the income capitalization approach is appropriate here due to the property's "income-generating potential and the time-value of money." The property at issue in *Canyon Villas*, an apartment complex, is clearly distinguishable from the property here, individual residential condominium units. Thus, Montage's reliance on *Canyon Villas* is misplaced. Moreover, county assessors must use the valuation approach that most accurately measures the full cash value of property, *see* NRS 361.227(5)(c), without any consideration of the owner's identity or intent behind purchasing that property. The Assessor in this case utilized the sales comparison approach, which is the approach generally used by appraisers in valuing individual condominium units, *see* Appraisal Institute, *supra*, at 77, and Montage's status as an investor does not warrant valuing its condominiums differently than those of other owners. To hold otherwise would result in a determination of the condominiums' value as an investment or their value to the current owner, not the full cash value, which is the price that each condominium unit would receive on the open market.

## CONCLUSION

We conclude that Montage failed to demonstrate that the State Board's decision upholding the Assessor's valuation was unjust and inequitable. The State Board did not apply a fundamentally wrong principle when it found that the subdivision discount applied only to the land. Nor did the State Board apply a fundamentally wrong principle in assessing the condominiums as individual units and utilizing the sales comparison method to ensure that the taxable value did not exceed the full

 

cash value. Accordingly, we affirm the district court's order denying judicial review of the State Board of Equalization's decision.[3]

_____, J.
Hardesty

We concur:

_____, J.
Cherry

_____ J.
Parraguirre

---

[3]Montage's motion for oral argument is denied. NRAP 34(f)(1).