OPINION
 

 Per Curiam:
 

 The facts in this case are brief and undisputed. Indeed, both parties stipulated that only issues of law exist for this court to decide.
 

 On November 10, 1987, respondent State of Nevada, Department of Taxation (“Department”), granted appellant Key Airlines, Inc. (“Key”) a sales and use tax exemption on its aircraft pursuant to NRS 372.317. NRS 372.317 states:
 

 There are exempted from the taxes imposed by this chapter the gross receipts from the sale of aircraft and major compo
 
 *1034
 
 nents of aircraft, such as engines and other components made for use only in aircraft, to an air carrier which:
 

 1. Holds a certificate to engage in air transportation issued pursuant to 49 U.S.C. § 1371 and is not solely a charter air carrier or a supplemental air carrier as described in Title 49 of the United States Code; and
 

 2. Maintains its central office in Nevada and bases a majority of its aircraft in Nevada.
 

 At the time of the exemption, Key’s central office was located in Las Vegas, and a majority of its aircraft was stationed in Nevada.
 

 In 1988, appellant Worldcorp (“Worldcorp”) acquired Key. Thereafter, Key joined appellants Worldcorp Leasing, Inc. (“Leasing I”), and Worldcorp Leasing II, Inc. (“Leasing II”), as wholly-owned subsidiaries of Worldcorp. Since the central offices of Worldcorp, Leasing I, and Leasing II were located in Herndon, Virginia, Worldcorp moved Key’s headquarters to Herndon. Thus, Key sent a letter informing the Department of these events. On May 3, 1988, the Department responded to Key’s missive by rescinding the sales and use tax exemption granted in 1987. The Department’s rescission was based on Key’s central office being relocated to Herndon.
 
 [1]
 
 Key did not protest the Department’s determination to rescind the exemption.
 

 On June 30, 1988, Leasing I purchased six aircraft which were subsequently leased to Key. On October 5, 1988, Leasing II leased two more aircraft to Key. Key paid Leasing I and Leasing II $58,000.00 a month for each leased aircraft. The leases were entered into so that Key could meet its contractual obligations with the Military Airlift Command stationed at Nellis Air Force Base in Las Vegas. That contract required Key to always have three to five aircraft in Nevada seven days a week, twenty-four hours a day at the disposal of the Military Airlift Command. Those planes leased by Key which were not being rotated through Nellis Air Force Base were used for interstate commerce.
 

 Between July 1, 1989, and June 30, 1992, Worldcorp, Leasing I, Leasing II, and Key (collectively “Taxpayers”) paid sales and use tax on the gross receipts of the aircraft lease payments, which totaled $469,608.60. Nevertheless, on January 28, 1993, the
 
 *1035
 
 Department levied an additional assessment of sales and use tax for the period of July 1, 1989, through June 30, 1992. The assessment was based on the gross receipts of the aircraft lease payments and totaled $156,025.80.
 

 On February 26, 1993, under protest, Taxpayers paid the assessment. On June 30, 1993, a claim for a refund in the amount of $351,410.40 was submitted to the Department by Taxpayers. Taxpayers claimed that gross receipts of the lease payments were exempt from sales and use tax under NRS 372.317. Alternatively, Taxpayers maintained that NRS 372.317 violated the Commerce Clause of the United States Constitution because it unfairly burdened interstate commerce by exempting from sales and use tax only those entities with central offices located in Nevada.
 

 On December 29, 1993, the Department rejected Taxpayers’ claim for a refund on the basis that Leasing I and Leasing II lacked standing to sue. Further, the Department noted that exemption from use taxes in Nevada was found to be constitutional pursuant to Great American Airways v. Tax Commission, 101 Nev. 422, 705 P.2d 654 (1985).
 

 Taxpayers appealed the Department’s decision to the district court. Without reaching the constitutional issue, the district court dismissed the appeal on the following basis:
 

 3. Leasing I, Leasing II, and Worldcorp do not qualify for an exemption under NRS 372.317 because they do not hold a certificate to engage in air transportation. Therefore, the Court need not reach the constitutionality of NRS 372.317(2) as applied to those parties.
 

 4. Key has no rights to assert under NRS 372.317 because it was not assessed a tax and thus has not been injured as the result of the revocation of its exemption. Therefore, the Court need not reach the constitutionality of NRS 372.317(2) as applied to Key.
 

 Taxpayers now appeal to this court, arguing essentially the same grounds argued before the district court.
 

 The district court ruled that Key and Worldcorp lacked standing to challenge NRS 372.317 because they were not responsible for paying the sales and use tax. That obligation fell on Leasing I and Leasing II. However, the lower court denied Leasing I and Leasing II the opportunity to challenge the sales and use tax exemption because, as lessors, they did not possess the proper air transportation certificate required by NRS 372.317. Only Key held the requisite certificate. We conclude that the trial court erred in its interpretation of NRS 372.317.
 

 It is well settled in Nevada that when statutory language is
 
 *1036
 
 clear on its face, its intention must be deduced from such language. Cleghorn v. Hess, 109 Nev. 544, 548, 853 P.2d 1260, 1262-63 (1993). Here, the dispositive language in NRS 372.317 for resolution of the standing issue states: “There are exempted from the taxes imposed by this chapter
 
 the gross receipts
 
 from the sale of aircraft ... to an air carrier . . . .” (Emphasis added.)
 
 [2]
 
 From this plain language, it is clear that the sales and use tax exemption applies to the
 
 gross receipts
 
 of the lease transaction. Thus, it is the transaction itself which is exempted, not the parties to the transaction.
 

 The plain language of NRS 372.317 exempts from sales and use tax the gross receipts from lease payments so long as the
 
 air carrier
 
 (and not a seller/lessor) holds a certificate to engage in air transportation pursuant to 49 U.S.C. § 1371 (1994), bases a majority of its aircraft in Nevada, and maintains a central office in Nevada. Since both parties to the transaction benefit from the exemption under NRS 372.317, both have standing to challenge an allegedly wrongful revocation. Boston Stock Exchange v. State Tax Comm’n, 429 U.S. 318, 320 n.3 (1977). Therefore, we conclude that the trial court erred in its determination that Leasing I, Leasing II, and Key all lacked standing to challenge the constitutionality of NRS 372.317.
 
 [3]
 
 Accordingly, we now turn our discussion to the constitutionality of NRS 372.317.
 

 
 *1037
 
 The Commerce Clause states: “The Congress shall have power . . . [t]o regulate Commerce . . . among the several States . . . U.S. Const, art. I, § 8, cl. 3. The United States Supreme Court has interpreted this language to prevent states from discriminating or burdening interstate commerce. New Energy Co. of Indiana v. State Tax Comm’n, 486 U.S. 270, 272 (1988). Specifically, the Court has held that no state may “impose a tax which discriminates against interstate commerce ... by providing a direct commercial advantage to local business.” Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 457 (1959).
 

 In Armco Inc. v. Hardesty, 467 U.S. 638 (1984), the state of West Virginia imposed a gross receipts tax on businesses selling tangible property at wholesale prices. However, local manufacturers in West Virginia were exempt from the tax.
 
 Id.
 
 at 640. Appellant Armco Inc. (“Armco”), a steel manufacturer, was an Ohio corporation qualified to do business in West Virginia.
 
 Id.
 
 at 639. Through its franchisees and resident salesmen, Armco claimed it was entitled to the gross receipts exemption on the steel it sold in West Virginia.
 
 Id.
 
 at 640. When the local tax commission sought to enforce the tax, Armco refused to pay it, claiming the exemption violated the Commerce Clause by discriminating against interstate commerce.
 
 Id.
 
 at 641.
 

 The West Virginia Supreme Court upheld the tax, but the U.S. Supreme Court reversed.
 
 Id.
 
 In striking down the statute as a violation of the Commerce Clause, the Supreme Court stated:
 

 [A] State may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State.
 

 On its face, the gross receipts tax at issue here appears to have just this effect. The tax provides that two companies selling tangible property at wholesale in West Virginia will be treated differently depending on whether the tax payer conducts manufacturing in the State or out of it.
 

 Id.
 
 at 642.
 

 The instant matter is analogous to
 
 Armco.
 
 NRS 372.317 provides that two companies will be taxed differently depending on the domicile of their respective central offices. Those headquartered in Nevada will receive the tax exemption while corporations headquartered in a foreign jurisdiction will not. Key would have qualified for the tax exemption, but for the simple fact it moved its central office to Virginia. This disparate treatment between domestic and foreign corporations is precisely the type of economic protectionism prohibited by the Commerce Clause. As the Supreme Court stated in Bacchus Imports, Ltd. v. Dias, 486 U.S.
 
 *1038
 
 263, 273-74 (1988), “regulatory measures designed to benefit instate economic interests by burdening out-of-state competitors [violate the Commerce Clause].”
 
 [4]
 
 Therefore, we conclude that NRS 372.317 must be stricken from our statutory scheme because it runs afoul of the Commerce Clause.
 
 [5]
 

 When a tax statute is determined to be unconstitutional, the taxpayer is entitled to a refund. Iowa-Des Moines Nat’l Bank v. Bennet, 284 U.S. 239, 247 (1931). The parties in this case have stipulated that Leasing I, Leasing II, and Key are entitled to a refimd of $156,025.80, if NRS 372.317 is found unconstitutional. Accordingly, we reverse the district court’s order and remand this matter to the district court. On remand, the district court shall instruct the Department to refund the stipulated amount.
 

 [1]
 

 The notice of rescission issued by the Department provided in relevant part:
 

 Original information supplied indicated Key Airlines moved its main executive offices to Las Vegas in October 1985 and was in fact then based in Nevada. Documentation now indicates, Key Airlines has been acquired by Worldcorp and is now based in Herndon, Virginia. . . . [W]e hereby rescind the exemption letter issued to Key Airlines and declare Key Airlines has not met the statutory qualification for exemption.
 

 [2]
 

 The word “sale” in NRS 372.317 encompasses a lease. NRS 372.060, the statutory provision defining sale for purposes of NRS 372.317, provides in relevant part:
 

 1. “Sale” means and includes any transfer of title or possession, exchange, barter,
 
 lease
 
 or rental, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration.
 

 2. “Transfer of possession,” “lease,” or “rental” includes only transactions found by the tax commission to be in lieu of a transfer of title, exchange or barter.
 

 (Emphasis added.)
 

 [3]
 

 In light of the fact that the recision letter expressly stated that Key’s relocation triggered the loss of tax exemption, we are unpersuaded by Department’s argument which attempts to negate Taxpayer’s standing by distinguishing between a “lease” and “true lease.”
 
 See also
 
 Morse v. Morse, 99 Nev. 387, 388, 663 P.2d 349, 350 (1983) (precluding parties from challenging stipulated facts).
 

 The Department also argues that this case has nothing to do with sales tax. Rather, Leasing I and Leasing II were paying
 
 use
 
 tax on the leases. However, the plain language of NRS 372.317 exempts all “taxes imposed by” the Sales and Use Tax Act. NRS 372.317. As use tax is part of NRS 372 et seq., the exemption must also apply to use tax. Additionally, the Department admitted in the stipulated facts that Taxpayers’ exemption included sales and
 
 use
 
 tax on the leases.
 

 [4]
 

 The Department makes passing reference to the constitutionality of NRS 372.317 based on this court’s ruling in Great American Airways v. Tax Commission, 101 Nev. 422, 705 P.2d 654 (1985). In
 
 Great American Airways,
 
 this court upheld a use tax assessed to a Nevada-based air carrier which purchased a plane in Kansas but used it in Nevada.
 
 Id.
 
 at 424, 705 P.2d at 656. However, that case is distinguishable in two respects. First, that case addressed the discriminatory effect of
 
 NRS 372.320
 
 on interstate commerce. The language of that statute varies dramatically from NRS 372.317 in that NRS 372.320 contains no requirements regarding the maintenance of a central office or a majority of goods in Nevada. Second, the appellant was not unfairly discriminated against in
 
 Great American Airways
 
 because all businesses which stored an airplane in Nevada, regardless of their corporate domicile, were subject to the use tax. In this case, the Department is seeking to levy a sales and use tax simply because a Nevada-based air carrier has its home office in a foreign state.
 

 [5]
 

 We need not address Taxpayers’ equal protection argument.
 
 See, e.g.,
 
 Director, Dep’t Prisons v. Arndt, 98 Nev. 84, 86, 640 P.2d 1318, 1320 (1982) (noting that “[i]t is well settled that this court will not address constitutional issues unless the[y] are requisite to the disposition of a case”).