OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 In this appeal, we must determine whether the Washoe County Assessor had the authority under NRS 361.260(7) to use certain disputed methodologies to appraise land for tax purposes and, if so, whether the appraisals that followed resulted in unequal and unjust property valuations. Because we conclude that NRS 361.260(7) did not permit the Assessor to adopt standards or methods of valuation not approved by the Nevada Tax Commission, the use of the disputed methodologies was improper under the Nevada Constitution’s requirement that property be taxed according to a uniform and equal rate of assessment.
 

 FACTS
 

 Respondents (Taxpayers) are seventeen taxpayers and owners of real property located near Lake Tahoe in Incline Village or Crystal Bay, Washoe County, Nevada. In 2002, appellant Washoe County Assessor (Assessor) performed a mass reappraisal of the properties in that area to determine their taxable values for the 2003-2004 tax year. After receiving dramatically increased tax bills, the Taxpayers questioned the methods utilized by the Assessor to value their real property.
 

 State law requires county assessors to complete reappraisals at least every five years.
 
 [2]
 
 In completing appraisals, county assessors must use the “sales comparison approach,” which is a standard method to determine the full cash value of land on which its taxable value is based; under this approach, comparable sales of land in the same area are examined.
 
 [3]
 
 For the five years preceding the 2003-2004 tax year, the Assessor determined the taxable value of the land in this area of Washoe County using the “factor method,” a statutorily approved method of adjusting the value of land since it was last reappraised under a regulation adopted by the Nevada
 
 *1406
 
 Tax Commission.
 
 [4]
 
 Concerned that it would be difficult to determine comparable sales for land in the Incline Village/Crystal Bay area for the 2003-2004 tax year, the Assessor decided to use four methodologies to adjust comparable sales for the reappraisal period. These disputed methodologies adjusted the comparable sales for (1) a parcel’s view of Lake Tahoe, using a point system to classify each parcel and increasing the values accordingly; (2) a five-step “rock” classification, which raised the value of the land based on its relationship to the lakefront; (3) a “paired sales analysis” which estimated the value of a subject property based on previous sales of comparable properties adjusted, however, as though those properties had sold currently; and (4) for properties with residences slated to be demolished for rebuilding, the Assessor adopted a “teardown” method to determine comparable sales in which the entire value of an improved property was assigned to the land.
 

 Dissatisfied with the responses they received from the Assessor’s Office, the Taxpayers filed individual petitions for review of the assessed valuations with the Washoe County Board of Equalization. The petitions alleged that the Assessor was using unauthorized methodologies to value land. Given the number of petitions filed, the County Board held a public meeting to discuss the Assessor’s methodologies before taking evidence on each individual case.
 

 During the meeting, the Taxpayers argued that the methodologies were not authorized by any statute or regulation and that, further, the Assessor was not applying his own methodologies consistently when appraising properties throughout the county.
 

 After reviewing the assessments, the County Board determined that the parcel sales analysis or time adjustment was likely appropriate until mid-2000, but after that time, it likely resulted in an inflated rate of appreciation. Accordingly, the County Board “equalized” the tax valuations by reducing the valuation for all lakefront properties by 10 percent. The County Board also issued an individualized decision regarding each property. Not satisfied with the County Board’s determinations, the Taxpayers administratively appealed to the Nevada State Board of Equalization (State Board).
 

 At the request of over 100 Incline Village and Crystal Bay taxpayers, the State Board held a special hearing regarding the appropriate methodologies for the appraisal of county land. At the hearing, the Taxpayers’ attorneys presented the same arguments they had presented to the County Board.
 

 In response, Washoe County argued that the Assessor used the comparative sales approach in reappraising the properties, as
 
 *1407
 
 required by law, and that the Taxpayers were challenging only the Assessor’s chosen methods to implement that approach. According to the County, the type of mechanized, mathematical approach to appraisal demanded by the Taxpayers was unheard of. Instead, the County asserted, the exercise of professional judgment and the use of generally accepted appraisal practices are not susceptible to codification. Because the Taxpayers presented no expert testimony to invalidate the disputed methodologies, the County argued that the Taxpayers had not met their burden of showing, by clear and convincing evidence, that the Assessor applied a fundamentally wrong appraisal principle.
 

 In its written decision, the State Board found that the Assessor’s methodologies for appraising the properties was appropriate:
 

 [Adjustments in valuation for time and view and the use of “tear-downs” as comparable sales for vacant land are appropriate appraisal tools and standard accepted valuation methodologies.
 

 In making the finding that adjustments to the value of land for time and view are standard accepted valuation methodologies, the State Board referenced
 
 The Appraisal of Real Estate
 
 (12th Edition) and the
 
 Dictionary of Real Estate Appraisal.
 
 The State Board determined the use of “tear-downs” as comparable sales to vacant land is very common and typically used by brokers, owners, buyers, sellers, and real estate appraisers in the Lake Tahoe real estate market as well as other areas in the nation. The State Board further determined the Assessor is correctly using these valuation methodologies pursuant to NRS 361.260(7).
 

 After the State Board issued its written decision approving the Assessor’s methodologies, the Taxpayers presented their individual appeals to the State Board. The State Board issued separate decisions as to whether the disputed methodologies were consistently and appropriately applied to the individual properties.
 

 The Taxpayers then filed, in the district court, a complaint and a petition for judicial review, naming the State Board, the Nevada Tax Commission, the Nevada Department of Taxation, and the Assessor. The Taxpayers sought tax refunds and centered their arguments on the appraisal methodologies used by the Assessor in 2002 in valuing their real property for tax purposes. The complaint alleged that the Taxpayers were unaware, before 2003, that the Assessor was using any of the disputed methodologies to assess property within the county.
 

 Under the court’s direction, the Taxpayers filed an opening brief limited to one general issue: whether the Assessor and State Board
 
 *1408
 
 used rules or standards of assessment, which should have been codified, during the reappraisal of the Incline Village properties, and if those rules or standards should have been codified, whether they were properly promulgated under the Nevada Administrative Procedure Act. The County filed a reply brief.
 

 After the district court conducted a hearing, it found the process through which the Assessor developed his methodologies insufficient to satisfy the requirements of the Administrative Procedure Act and declared those methodologies invalid. The district court also found that the inconsistent application of the disputed methodologies within the county “illustrates the high probability that the taxes were not assessed on an equal and uniform basis, as required by the Nevada Constitution.” Consequently, the district court granted the Taxpayers’ requested relief, reversed the State Board’s decisions, and ordered Washoe County to roll back the tax valuations on those properties to their 2002-2003 amounts. The district court also ordered refunds to any Taxpayers who had paid more than the 2002-2003 amounts, with interest.
 

 The County then filed this timely appeal. The City of Reno and the Washoe County School District filed amicus curiae briefs in support of the County’s position.
 

 DISCUSSION
 

 We must determine whether the methods used by the Assessor are valid and, if so, whether their application only in the Incline Village and Crystal Bay areas resulted in unequal and unjust property valuations. We conclude that the methodologies used are invalid. Specifically, their inconsistent application violated the uniform and equal rate of assessment required by Article 10 of the Nevada Constitution. The 2003-2004 valuations, which were based on those methodologies, are therefore unjust and inequitable. Any taxes collected that can be attributed to those invalid methodologies are unconstitutional, as determined by the district court, and the Taxpayers who paid such taxes are entitled to a refund.
 

 Standard of review
 

 In reviewing orders resolving petitions for judicial review that challenge State Board decisions, the State Board’s determinations are presumed valid.
 
 [5]
 
 The burden of proof is on the taxpayer “to show by clear and satisfactory evidence that any valuation established by the Nevada Tax Commission or the county assessor or equalized by the county board of equalization or the State Board of
 
 *1409
 
 Equalization is unjust and inequitable.”
 
 [6]
 
 The taxpayer “does not satisfy this burden ‘unless the court finds that the [S]tate [B]oard applied a fundamentally wrong principle, or refused to exercise its best judgment, or that the assessment was so excessive as to create an implication of fraud and bad faith.’ ”
 
 [7]
 
 Additionally, the district court may not foreclose the State Board’s exercise of independent judgment on matters within its expertise, particularly since the State Board is composed of members with particular knowledge about property valuation.
 
 [8]
 
 Agency decisions that are based on statutory construction, however, are questions of law, which this court reviews de novo.
 
 [9]
 
 And, we will declare a government action invalid if it violates the Constitution.
 
 [10]
 

 The statutory scheme governing property tax assessment in Nevada
 

 Article 10, Section 1 of the Nevada Constitution declares that “[t]he Legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory.” The Legislature has created the Department of Taxation, headed by the Nevada Tax Commission, to administer the state taxation system.
 
 [11]
 
 The Tax Commission has the duty to administer Nevada’s revenue and taxation laws.
 
 [12]
 

 In 2005, the Legislature substantially amended many of the property tax assessment statutes.
 
 [13]
 
 However, to resolve this appeal, we must examine the statutes governing tax assessment as they existed in 2002, since the Taxpayers’ challenge their properties’ taxable values for the 2003-2004 tax year. In 2002, NRS 360.250(1) stated that, as part of its duties,
 

 The Nevada Tax Commission may:
 

 (a) Confer with, advise and direct county assessors, . . . and all other county officers having to do with the preparation
 
 *1410
 
 of the assessment roll or collection of taxés or other revenues as to their duties.
 

 (b) Establish and prescribe general and uniform regulations governing the assessment of property by the county assessors of the various counties, not in conflict with law.
 
 [14]
 

 Under NRS 360.280(l)(a), and in conjunction with NRS 360.250(1), county assessors were (and still are) required to “[ajdopt and put in practice the manuals and regulations established and prescribed by the Nevada Tax Commission governing the assessment of property.’ ’
 

 County assessors appraise properties located entirely within the boundaries of a single county. NRS 361.260(6) requires county assessors to appraise “all real property at least once every 5 years.” In 2002, NRS 361.260(7) provided that county assessors “shall establish standards for appraising and reappraising land.”
 
 [15]
 

 When appraising properties, county assessors must determine the amount of tax due, based on a property’s taxable value.
 
 [16]
 
 Under NRS 361.227, taxable value is determined by the value of vacant or improved land and any improvements on the land:
 

 1. Any person determining the taxable value of real property shall appraise:
 

 (a) The full cash value[
 
 17
 
 ] of:
 

 (1) Vacant land by considering the uses to which it may lawfully be put, any legal or physical restrictions upon those uses, the character of the terrain, and the uses of other land in the vicinity.
 

 (2) Improved land consistently with the use to which the improvements are being put.
 

 (b) Any improvements made on the land by subtracting from the cost of replacement of the improvements all applicable depreciation and obsolescence.
 

 
 *1411
 
 Further, NRS 361.228(3) provides that “attributes of real property, such as zoning, location, view and geographic features, are not intangible personal property and must be considered in valuing the real property, if appropriate.” Therefore, in determining a property’s taxable value, a county assessor’s appraisal is based on valuing two separate components — the land, either vacant or improved, and any improvements on the land, factoring in any of the land’s pertinent attributes.
 

 Both historically, and at present, the standard method that county assessors must utilize in determining the full cash value of land is the sales comparison approach.
 
 [18]
 
 During the time frame at issue here, the sales comparison approach used market data or a comparative approach to property valuation. Further, if sufficient market data were not available, the assessor could use an (1) allocation procedure, (2) anticipated use or development procedure, or (3) land residual technique.
 
 [19]
 
 None of the disputed methodologies used by the Assessor for the 2003-2004 tax year fall within these formerly permissive market data alternatives.
 

 
 *1412
 
 In moving from the land’s full cash value, based on the sales comparison approach, to its taxable value, a county assessor must ensure that “[t]he computed taxable value of any property [does] not exceed its full cash value.”
 
 [20]
 
 In determining whether the taxable value of a property exceeds its full cash value, the assessor may use, as applicable, one or more of the following methods: (1) an analysis of comparative sales, (2) a summation of land and improvement values, and (3) capitalization of the income generated by the property’s use.
 
 [21]
 
 If the property’s taxable value exceeds its full cash value, the assessor must examine the determined taxable value; if this value is proper, then the assessor must reduce the improvements’ taxable values so that the overall taxable value does not exceed the full cash value. If further reductions are needed, the assessor may also reduce the value of the land.
 
 [22]
 

 A taxpayer who disagrees with the assessor’s valuation of his or her property may petition the County Board of Equalization for review.
 
 [23]
 
 We have held, however, that ‘ ‘valuation of property is an illusory matter upon which experts hold differences of opinion. As a general proposition, the taxpayer’s burden of proof is not met by merely showing a difference of opinion between witnesses and the assessing authority. There exists no absolute mathematical formula to establish market value.”
 
 [24]
 
 Thus, the taxpayer bears a significant burden in demonstrating that his or her property was inappropriately valued.
 

 The State Board, which is responsible for equalizing all property valuations in this state, also considers taxpayer appeals from the actions of the County Boards of Equalization.
 
 [25]
 
 If the State Board does not provide a taxpayer with relief, a taxpayer may, after protesting the payment of taxes in excess of what the owner believes is justly due, ‘‘commence a suit in [district court] against the State and county in which the taxes were paid, and, in a proper case, both the Nevada Tax Commission and the Department [of Taxation] may be joined as a defendant.”
 
 [26]
 

 
 *1413
 

 Property value methodologies
 

 In this appeal, we must determine the validity of the methodologies the Assessor used to assess property values in the Incline Village and Crystal Bay areas. The analysis necessarily begins with Article 10, Section 1 of the Nevada Constitution, which states,
 

 The Legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory ....
 

 By using the mandatory term “shall,” the Constitution clearly and unambiguously requires that the methods used for assessing taxes throughout the state must be “uniform.”
 
 [27]
 
 Unless ambiguous, the language of a constitutional provision is applied in accordance with its plain meaning.
 
 [28]
 
 Thus, county assessors must use uniform standards and methodologies for assessing property values throughout the state.
 

 In order to comply with its obligations under Article 10, the Legislature created the Department of Taxation, headed by the Tax Commission, to administer the revenue and taxation laws of the State of Nevada.
 
 [29]
 

 The Legislature has, under NRS 360.250(1), directed the Tax Commission to establish regulations that could be applied uniformly throughout the state. In 2002, that statute provided, in part, that:
 

 The Nevada Tax Commission may:
 

 (b) Establish and prescribe general and uniform regulations governing the assessment of property by the county assessors of the various counties, not in conflict with law.
 

 These regulations, in turn, must be adopted and applied by the county assessors. Since its inception, NRS 360.280(1) has stated that “[a] 11 county assessors shall . . . [a]dopt and put in practice the manuals and regulations established and prescribed by the Nevada Tax Commission governing the assessment of property.” When read together, these statutes clearly place on the Tax Commission a statutory duty to create a uniform system of regulations for assessing real property, which the county assessor must adopt. Therefore, a county assessor’s ability to comply with NRS
 
 *1414
 
 360.280(1) depends on the Tax Commission creating appropriate regulations.
 

 The Tax Commission did not establish sufficient regulations for the assessors to adopt
 

 As of 2002, the Tax Commission had not fully complied with its statutory duty to establish regulations .that the county assessors could adopt for circumstances in which comparable rates might be difficult to- determine. The only relevant regulations adopted by the Tax Commission in 1983 were NAC 361.118
 
 [30]
 
 (directing appraisers to use market data and a comparative approach when valuing properties) and NAC 361.131
 
 [31]
 
 (prohibiting the assessed value of property from exceeding the subject property’s actual cash value). Neither of those regulations gave the county assessors the guidance they needed to perform their responsibilities or uniformly apply the statutes, and no effort appears to have been made by the Tax Commission to update the regulations since 1983 to add additional market data methodologies when a difficulty arose in determining comparable sales. Finally, although the Legislature, as discussed above, has enacted statutes outlining what must be appraised to determine a property’s taxable value and specifying that a property’s taxable value cannot exceed its full cash value, these statutes provided little guidance with respect to how these appraisals should be accomplished in the absence of comparable sales information. Therefore, the county assessors had to develop their own methods for assessing property values in their respective counties.
 

 NRS 361.260(7) did not authorize county assessors to create their own valuation methodologies
 

 The county assessors, however, did not have the authority to create individualized valuation methodologies in 2002. In 2001, the Legislature amended NRS 361.260
 
 [32]
 
 to include a new subsection, which provided that county assessors “shall use the standards for appraising and reappraising land adopted by the Nevada Tax
 
 *1415
 
 Commission pursuant to NRS 360.250.” The State relies on this provision to support the Assessor’s 2002 actions. The State’s reliance on that statute is misplaced, however. The legislative history shows that the Legislature passed NRS 361.260(7) for the limited purpose of allowing county assessors to adopt standards using more current sales comparables within the comparable sales methodology than was previously mandated.
 
 [33]
 
 The Legislature did not intend that NRS 361.260(7) create a broad grant of authority in the county assessors to develop individualized valuation methodologies county by county.
 

 In addition, the State’s interpretation of NRS 361.260(7) undermines the Legislature’s original purpose in creating the Tax Commission. The Legislature created the Tax Commission to centralize the taxation authority and make the county assessors’ work more efficient through uniform assessment regulations. The Legislature also sought to relieve the individual county assessors of the antagonism and negative political pressure often created by an individualized assessment system. As noted during a 1913 State Board meeting, “in many cases [a centralized system] would save [the county assessor] from incurring the bitter hostility which would be damaging to him as a man and an officer.”
 
 [34]
 

 In essence, the State argues that in 2001, the Legislature passed NRS 361.260(7) with the intent to return to a system of individualized county-by-county taxation methods. However, the inequitable tax valuations and notoriety incurred by the Assessor since he established and implemented the disputed methodologies are exactly what the Legislature intended to avoid when it originally created the Tax Commission. For this reason, as well as the legislative history indicating that the provision was intended simply to allow county assessors to use more current sales comparables, we disagree with the State’s interpretation of NRS 361.260(7).
 

 The Assessor violated the Constitution
 

 In the absence of guidance from the Tax Commission, the county assessors in 2002 had to find their own methodologies for assessing property values. Some assessors turned to what they characterize as generally recognized appraisal standards and guide
 
 *1416
 
 lines. However, without guidance from the Tax Commission as to which set of standards and guidelines would constitute the state standard, there was no guarantee that the assessors would look to the same manuals or practices.
 
 [35]
 

 In this case, the Assessor used what he characterized as generally recognized appraisal standards and guidelines and created a set of methodologies that were unique to the Incline Village and Crystal Bay areas. We do not address whether those methodologies were standard or generally recognized in the appraisal industry. Instead, we conclude that the methodologies the Assessor used are invalid and violated the Nevada Constitution because they were not consistent with the methods used throughout Washoe County.
 
 [36]
 
 The methodologies also violated the Constitution because they were not the same as the methods used by assessors in other counties.
 
 [37]
 
 . Further, due to the Tax Commission’s dereliction, county assessors in other counties appear to have used methodologies that were not uniform with those used by Washoe County for Incline Village and Crystal Bay.
 
 [38]
 
 We conclude on that basis that none of the four methodologies used by the Assessor in 2002 to assess property values in Incline Village and Crystal Bay were constitutional.
 

 The Taxpayers are entitled to a refund
 

 We have recognized that “[w]hen a tax statute is determined to be unconstitutional, the taxpayer is entitled to a refund.”
 
 [39]
 
 The district court properly concluded that any Taxpayers who paid taxes under the 2003-2004 assessment are entitled to a refund because they have met their burden and have shown that their 2003-2004 property tax assessments are unconstitutional as based on nonuniform valuation methods. The district court appropriately declared those valuations null and void.
 
 [40]
 

 To determine what taxes should have been paid, we note that the Taxpayers concede that their properties were properly valued in
 
 *1417
 
 2002-2003. Accordingly, the district court properly ordered that their 2003-2004 valuations be set to the 2002-2003 level. Further, as directed by the district court, the Taxpayers are entitled to a refund of the difference between any taxes they paid based on their 2003-2004 valuations and the taxes they should have paid based on their 2002-2003 valuations.
 
 [41]
 
 That formula allows the Taxpayers to receive a refund for the taxes that are directly attributable to the use of the disputed methodologies. The Taxpayers are also entitled to interest on those excess monies collected, as ordered by the district court, and in accordance with NRS 360.2935.
 
 [42]
 

 CONCLUSION
 

 The Nevada Tax Commission failed to fulfill its statutory duty to update general and uniform regulations governing the assessment of property. Without uniform regulations from the Tax Commission, the Assessor, understandably, created the methodologies he deemed necessary to assess the properties in the Incline Village and Crystal Bay areas. Those methodologies are unconstitutional, however, because they are inconsistent with the methodologies used in other parts of Washoe County and the entire state. Therefore, for the reasons discussed above, we affirm the district court’s order. Based upon our conclusions, we do not need to decide the other issues raised by the parties.
 
 [43]
 

 Rose, C. J., Becker, Gibbons, Douglas and Parraguirre, JJ., concur.
 

 [2]
 

 NRS 361.260(6).
 

 [3]
 

 NAC 361.118.
 

 [4]
 

 NRS 361.260(5); NAC 361.118.
 

 [5]
 

 Imperial Palace v. State, Dep’t Taxation,
 
 108 Nev. 1060, 1066, 843 P.2d 813, 817 (1992).
 

 [6]
 

 NRS 361.430.
 

 [7]
 

 Imperial Palace,
 
 108 Nev. at 1066, 843 P.2d at 817 (quoting
 
 Weiss v. State of Nevada, 96
 
 Nev. 465, 467, 611 P.2d 212, 214 (1980)).
 

 [8]
 

 Id.
 
 at 1069-70, 843 P.2d at 820.
 

 [9]
 

 Seino v. Employers Ins. Co. of Nevada,
 
 121 Nev. 146, 149, 111 P.3d 1107, 1110 (2005).
 

 [10]
 

 See Meridian Gold v. State, Dep’t of Taxation,
 
 119 Nev. 630, 635, 81 P.3d 516, 519 (2003).
 

 [11]
 

 NRS 360.010; NRS 360.120(2).
 

 [12]
 

 NRS 360.245.
 

 [13]
 

 We note that the legislative amendments to NRS 361.260(7) remove any argument that an assessor might make in the future that he or she could select appraisal methods that have not been expressly approved in regulations adopted by the Nevada Tax Commission.
 

 [14]
 

 In 2005, this section was amended to read:
 

 The Nevada Thx Commission shall adopt general and uniform regulations governing the assessment of property by the county assessors of the various counties, county boards of equalization, the State Board of Equalization and the Department. The regulations must include, without limitation, standards for the appraisal and reappraisal of land to determine its taxable value.
 

 2005 Nev. Stat., ch. 142, § 1, at 486-87 (codified at NRS 360.250(1)).
 

 [15]
 

 In 2005, the Legislature amended this section to provide that county assessors “shall use the standards for appraising and reappraising land adopted by the Nevada Tax Commission pursuant to NRS 360.250.” 2005 Nev. Stat., ch. 142, § 3, at 490.
 

 [16]
 

 NRS 361.227.
 

 [17]
 

 NRS 361.025 defines “full cash value” as “the most probable price which property would bring in a competitive and open market under all conditions requisite to a fair sale.”
 

 [18]
 

 NAC 361.118.
 

 [19]
 

 NAC 361.118 (2001). After substantial amendments in 2004, the NAC regulations now provide that in applying the sales comparison approach, “[t]he county assessor shall adjust the sales prices or unit values of comparable properties as necessary to eliminate differences between the comparable properties and the subject property that affect value.” NAC 361.118(l)(a). Further, the adjustments
 

 (1) Must be mathematical changes made to the sales prices or unit values of the comparable properties to account for differences in elements of comparison between the comparable properties and the subject property;
 

 (2) May be made only to the comparable properties, not to the subject property; and
 

 (3) May be made by adding or subtracting lump-sum dollar values, or by applying positive or negative percentage differentials, to the sales prices or unit values of the comparable properties.
 

 (b) The elements of comparison between the comparable properties and the subject property that may be used by the county assessor include, without limitation, the real property rights conveyed, financing terms, conditions of sale, market conditions, location, physical characteristics, size, zoning or use, governmental restrictions and nonrealty components of value.
 

 (c) If the subject property is improved land, the comparable properties must have a use that is consistent with that of the improved land.
 

 (d) The elements of comparison used and adjustments made by the county assessor must be identifiable and supported by verifiable market data.
 

 (f) If it is necessary to make an adjustment to recognize the view influence or any other property attribute associated with the subject property, the county assessor shall:
 

 (1) Make a physical determination of the view influence from the land of each respective view parcel. The county assessor shall make the view influence determination from any area on the parcel that is capable of development.
 

 [20]
 

 NRS 361.227(5).
 

 [21]
 

 Id.
 

 [22]
 

 NAC 361.131.
 

 [23]
 

 NRS 361.355 (complaints of overvaluation or excessive valuation by reason of undervaluation or nonassessment of other property); NRS 361.356 (appeal to county board of equalization where inequity exists); NRS 361.357 (appeal to county board of equalization where full cash value of property is less than its taxable value).
 

 [24]
 

 Nevada Tax Comm’n v. Southwest Gas Corp.,
 
 88 Nev. 309, 312, 497 P.2d 308, 309-10 (1972) (citation omitted).
 

 [25]
 

 NRS 361.360; NRS 361.400(1).
 

 [26]
 

 NRS 361.420(2).
 

 [27]
 

 See Nevadans for Nevada v. Beers,
 
 122 Nev. 930, 942, 142 P.3d 339, 347 (2006).
 

 [28]
 

 Id.
 

 [29]
 

 NRS 360.200.
 

 [30]
 

 NAC 361.118 Land.
 

 In making a physical appraisal, each county assessor shall determine the full cash value of land by using market data or a comparative approach to valuation.
 

 [31]
 

 NAC 361.131 Taxable value exceeding full cash value.
 

 If the initially determined taxable value for any real property is found to exceed the full cash value of the property, the person determining taxable value shall examine the taxable value determined for the land, and if the land is properly valued, he shall appropriately reduce the taxable values determined for the improvements.
 

 [32]
 

 2001 Nev. Stat., ch. 331, § 19, at 1550.
 

 [33]
 

 Before NRS 361.260(7) was passed, county assessors were required to use sales comparables that were eighteen months in arrears of the actual start of the fiscal year in which they were billed. The Legislature passed NRS 361.260(7) intending to allow the county assessors to set a standard using more current comparables. Hearing on S.B. 376 Before the Senate Comm, on Taxation, 71st Leg. (Nev., March 27, 2001).
 

 [34]
 

 Minutes of Meeting of State Board of Assessors 163 (Nev., Jan. 13, 1913),
 
 reprinted in
 
 2 Appendix to Journal S. & Assemb., 26th Sess. (Nev. 1913).
 

 [35]
 

 For example, the record shows that the Assessor, the County Board, and the State Board have referenced seven different manuals, from different publishers, in order to show that the Assessor’s methodologies are generally accepted. However, there is no evidence to show that the methods in those manuals are consistent with one another.
 

 [36]
 

 Nev. Const. art. 10, § 1.
 

 [37]
 

 Id.
 

 [38]
 

 The record shows that the Douglas County Assessor uses a different methodology to determine the effect of views at Lake Tahoe in valuing property in that county.
 

 [39]
 

 Worldcorp
 
 v.
 
 State, Dep’t Tax.,
 
 113 Nev. 1032, 1038, 944 P.2d 824, 828 (1997).
 

 [40]
 

 We will affirm the district court’s order when it reaches the right decision, even if for the wrong reasons.
 
 Sengel v. IGT,
 
 116 Nev. 565, 570, 2 P.3d 258, 261 (2000).
 

 [41]
 

 The County argues in its opening brief that the district court lacked jurisdiction to hear claims from Bye Bye Benton, LLC; Paul Levy; and James Moriarty because those parties failed to protest their tax assessments in writing before filing their complaint in district court. In a footnote in their answering brief, the respondents argue that the County waived its objection to the Bye Bye Benton, LLC, and Paul Levy claims, and that the objection to Moriarty’s claim was “handled between counsel.” The County does not refute the respondents’ argument in their reply brief. We therefore deem those objections waived.
 

 [42]
 

 NRS 360.2935: “[A] taxpayer is entitled to receive on any overpayment of taxes, ... a refund together with interest at a rate determined pursuant to NRS 17.130.”
 

 [43]
 

 During the administrative proceedings, the State Board determined that it lacked jurisdiction over respondent Jerry Stewart’s appeal, since Stewart did not first administratively appeal to and appear before the County Board. Although the State Board and Department of Taxation make note of this fact in their opening brief, they make no argument and cite no authority with respect to the justiciability of Stewart’s claim. Consequently, we will not consider that issue.
 
 See, e.g., Holland Livestock v. B & C Enterprises,
 
 92 Nev. 473, 474, 553 P.2d 950, 950 (1976) (noting that issues supported by no relevant authority will not be considered);
 
 cf. Weaver v. State, Dep’t of Motor Vehicles,
 
 121 Nev. 494, 502, 117 P.2d 193, 198-99 (2005) (pointing out that argument raised only in reply brief need not be considered).