**130 Nev., Advance Opinion 93**
IN THE SUPREME COURT OF THE STATE OF NEVADA

SIERRA PACIFIC POWER COMPANY
AND NEVADA POWER COMPANY,
JOINTLY DOING BUSINESS AS NV
ENERGY,
Appellants,
vs.
THE STATE OF NEVADA
DEPARTMENT OF TAXATION; AND
CLARK COUNTY,
Respondents.

No. 61193



FILED

DEC 04 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order granting in part and denying in part a petition for judicial review of an administrative order that denied a use tax refund. Second Judicial District Court, Washoe County; Janet J. Berry, Judge.

*Affirmed.*

John S. Bartlett, Carson City,
for Appellants.

Catherine Cortez Masto, Attorney General, and Gina C. Session, Senior Deputy Attorney General, Carson City,
for Respondent State of Nevada Department of Taxation.

Steven B. Wolfson, District Attorney, and Paul D. Johnson, Deputy District Attorney, Clark County,
for Respondent Clark County.

Norman J. Azevedo, Carson City; Jones Day and Charles C. Read, Los Angeles, California,
for Amicus Curiae Southern California Edison Company.

14-39437

Reese Kintz Brohawn, LLC, and Ryan W. Herrick, Incline Village, for Amicus Curiae Council on State Taxation.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

Appellants Sierra Pacific Power Company and Nevada Power Company, doing business jointly as NV Energy, bring coal into Nevada to produce electricity. Pursuant to NRS Chapter 372, NV Energy pays a use tax for its coal consumption. NRS 372.270 exempts from the use tax the sale, storage, or use of the proceeds of Nevada mines. The district court found, and the parties do not dispute on appeal, that NRS 372.270's tax exemption for locally mined minerals violates the dormant Commerce Clause of the United States Constitution, which prevents states from unlawfully discriminating against interstate commerce. We therefore do not consider the lawfulness of the statute as a whole, but instead limit our review to the two primary issues raised in this appeal—whether the offending language in NRS 372.270 is severable and whether NV Energy is entitled to a remedy.

We conclude that NRS 372.270 is not severable because it is clear that the legislative intent of the statute was to protect local mines, and thus, the district court properly refused to extend the exemption to all mine and mineral proceeds. Violations of the dormant Commerce Clause are remedied by compensating for the negative impact to the claimant as measured by the unfair advantage provided to the claimant's competitors.

*See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regulation of Fla.,* 496 U.S. 18, 31, 40-41 (1990). But because no interstate discrimination actually occurred here and NV Energy demonstrated no deprivation as a result of the statute's enforcement, we further conclude that NV Energy is not entitled to a refund.

## FACTS AND PROCEDURAL HISTORY

NV Energy owns and operates electricity-generating plants in Nevada, two of which are at issue, and both of which it fuels with coal. If NV Energy had obtained the coal it needed from Nevada mines, the coal would have been subject to taxation under NRS Chapter 362, which governs the taxation of Nevada mine and mineral proceeds and would be exempted from Nevada's sales and use tax under NRS 372.270.[1] Indeed, Article 10, Section 5 of the Nevada Constitution bans additional taxation of the proceeds of Nevada mines. Because Nevada coal mines do not supply the necessary quantity or quality of coal, however, NV Energy obtains all of its coal from mines outside Nevada. Accordingly, NV Energy pays a use tax on the coal used at its electricity plants. *See* NRS 372.185 (imposing an excise tax on the use or consumption of personal property that is purchased in another state for use in Nevada).

Arguing that the NRS 372.270 exemption for locally produced mine and mineral proceeds discriminates against interstate commerce in violation of the dormant Commerce Clause and that the exemption should therefore apply broadly to all such proceeds, regardless of the location of

---

[1]In the same manner, NRS 374.275 exempts Nevada mine and mineral proceeds from the local school support taxes imposed by NRS Chapter 374.

their extraction, NV Energy petitioned respondent State of Nevada Department of Taxation for a $25,932,735 refund for the use taxes NV Energy paid on coal purchased between April 2002 and October 2006. The Department denied NV Energy's request. NV Energy administratively appealed the Department's denial, but the administrative law judge and later the Nevada Tax Commission upheld the denial.

NV Energy petitioned the district court for judicial review of the administrative decision denying its requests for a refund. Before the district court,[2] NV Energy argued that to remedy the interstate discrimination the Department would have to pay NV Energy a full refund. NV Energy also maintained that the court should sever only the unconstitutional language from NRS 372.270 rather than strike the statutory exemption in its entirety. The district court reversed the decision of the administrative law judge, concluding that the exemption violated the Commerce Clause, and struck the statute in its entirety. The court refused, however, to award NV Energy any refund because there were no similarly situated competitors that received the tax exemption, and therefore no injury to redress.

NV Energy appeals.

## DISCUSSION

The primary issues on appeal are, first, whether the offending language of NRS 372.270 can be severed, and second, whether the district

---

[2]The district court found that NV Energy had standing to challenge the statute as facially unconstitutional, even though NV Energy failed to show the presence of any competitor who benefited from the tax exemption.

court erred in denying NV Energy a refund. We review administrative decisions under the same standard of review as the district court. *Garcia v. Scolari's Food & Drug*, 125 Nev. 48, 56, 200 P.3d 514, 519-20 (2009). Thus, like the district court, we decide these purely legal questions de novo. *Id.*

*The district court correctly struck NRS 372.270 in its entirety*

NRS 372.270 provides that "[t]here are exempted from the taxes imposed by this chapter the gross receipts from the sale of, and the storage, use or other consumption in this State of, the proceeds of mines which are subject to taxes levied pursuant to chapter 362 of NRS." The district court struck NRS 372.270 in its entirety, rather than sever the offending language. The contested language is the final clause: "which are subject to taxes levied pursuant to chapter 362 of NRS." NV Energy argues that judicial preference is to uphold legislation and, thus, the district court should have severed only the final clause. The Department argues that the proper remedy for a facially unconstitutional statute is to strike the statute as per se invalid, and that the Nevada Constitution prohibits statutes approved by referendum, like NRS 372.270, from being "amended, annulled, repealed, set aside, suspended or in any way made inoperative except by the direct vote of the people." Nev. Const. art. 19, § 1(3).

The severability doctrine obligates the judiciary "to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional provisions." *Rogers v. Heller*, 117 Nev. 169, 177, 18 P.3d 1034, 1039 (2001) (internal quotations omitted). This preference in favor of severability is set forth in NRS 0.020(1), which charges courts



with preserving statutes to the extent they "can be given effect without the invalid provision or application."

But a preference is not a mandate, and not all statutory language is severable. Before language can be severed from a statute, a court must first determine whether the remainder of the statute, standing alone, can be given legal effect, and whether preserving the remaining portion of the statute accords with legislative intent. *Cnty. of Clark v. City of Las Vegas*, 92 Nev. 323, 336-37, 550 P.2d 779, 788-89 (1976). For the latter reason, voter initiatives and enacted ballot measures undergo additional scrutiny before statutory language may be severed, as the court must consider the effect of severance on the purpose of a voter-enacted statute. *See Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 515-18, 217 P.3d 546, 555-57 (2009) (discussing the severability of a voter-enacted statute and the importance of the components and purpose behind the statute).

There is no question that NRS 372.270 could be given legal effect if severed. The statute would continue to provide an exemption, albeit for all mine proceeds regardless of the mine's location. We therefore turn to whether severance would undermine the purpose of the statute.

Mineral taxation in Nevada is governed by NRS Chapter 362, NRS Chapter 372, and Article 10, Section 5 of the Nevada Constitution. NRS Chapter 362 imposes a property tax on the net proceeds of minerals extracted within Nevada. Meanwhile, NRS Chapter 372 imposes a use tax on consumers of tangible personal property purchased from another state and used within Nevada. Thus, proceeds from Nevada mines are subject to Chapter 362's net proceeds tax, while proceeds of minerals purchased out-of-state and used in Nevada are subject to Chapter 372's use tax.

SUPREME COURT
OF
NEVADA

(O) 1947A

Article 10, Section 5 of the Nevada Constitution prevents the Department from imposing any additional taxes on minerals that are subject to NRS Chapter 362's net proceeds tax (minerals that are mined in Nevada) until those proceeds lose their identity as proceeds. Accordingly, NRS 372.270 expressly exempts minerals subject to Chapter 362's net proceeds tax from also being taxed under Chapter 372's sales and use tax.[3]

The Sales and Use Tax Act, of which NRS 372.270 is a part, was enacted by the Legislature in 1955 and approved by voter referendum in 1956. Although there is little legislative history concerning the enactment of the statute that is now known as NRS 372.270, it is apparent that the Legislature originally enacted the exemption statute to avoid taxing the proceeds of mines already subject to the net proceeds tax. For example, during the drafting process, the Legislature deliberately changed the statutory language to include the now contested language. *See* S.B. 171, 47th Leg., § 52 (Nev. 1955) (initial version of statute that is now known as NRS 372.270); A. Journal, 47th Leg., 605-06 (1955) (revising the statute to include the language now being contested in this appeal). Moreover, in an attorney general opinion published at the time the statute was enacted in 1955, it was noted that the exemption was specifically limited to minerals already subject to taxation under Nevada's tax for net proceeds of minerals, and that minerals not subject to the net proceeds tax were not exempt. 55-76 Op. Att'y Gen. 120 (1955).

---

[3]Because the tax rates imposed by the sales and use tax are higher than the rates imposed by the net proceeds tax, and because the two taxes are measured differently, the district court determined that NRS 372.270 violated the dormant Commerce Clause.

Because the legislative history clarifies that the narrowness of the exemption is essential to the purpose of the statute, we conclude that NRS 372.270 is not severable. Were the district court to strike only the offending language, the resulting statute would exempt all sales, storage, and use of the proceeds of mines from taxation under Chapter 372, regardless of where the minerals are mined. Because NRS 372.270 was enacted to prevent double taxation of the proceeds of Nevada mines already subject to the net proceeds tax in Chapter 362—not to exempt entire categories from taxation—such a result would not be in accord with the Legislature's intent in enacting the exemption. Thus, for purposes of resolving this case, the district court did not err in striking NRS 372.270 in its entirety.

*The district court did not err in refusing to award NV Energy a refund*

State courts have the duty of determining the appropriate relief for Commerce Clause violations, and, to satisfy due process requirements, courts must provide "meaningful backward-looking relief" to correct taxes paid pursuant to an unconstitutional scheme. *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regulation of Fla.*, 496 U.S. 18, 31 (1990); *see also Am. Trucking Ass'ns v. Smith*, 496 U.S. 167, 176 (1990) (stating that state courts are "entrusted . . . . with the initial duty of determining appropriate relief" for Commerce Clause violations); *Tyler Pipe Indus. v. Wash. Dep't of Revenue*, 483 U.S. 232, 252-53 (1987) (same). Such relief dictates that taxpayers not only have a fair opportunity to challenge the validity of an imposed tax, "but also a 'clear and certain remedy.'" *McKesson*, 496 U.S. at 39 (quoting *Atchison, T. & S.F.R. Co. v. O'Connor*, 223 U.S. 280, 285 (1912)). This process ensures that the tax, as actually imposed on the taxpayer, does not violate the

dormant Commerce Clause by taxing in a way that discriminates against interstate commerce. *McKesson*, 496 U.S. at 43.[4]

NV Energy argues that this court must award a refund because that is the only appropriate remedy for taxes paid pursuant to a scheme that violates the dormant Commerce Clause, citing to *Worldcorp v. State, Department of Taxation*, 113 Nev. 1032, 1038, 944 P.2d 824, 828 (1997) ("When a tax statute is determined to be unconstitutional, the taxpayer is entitled to refund." (citing *Iowa-Des Moines Nat'l Bank v. Bennett*, 284 U.S. 239, 247 (1931))). We disagree. It has long been held that a refund is merely one remedy; other remedies will equally satisfy due process. *See Iowa-Des Moines Nat'l Bank*, 284 U.S. at 247; *McKesson*, 496 U.S. at 40-41.[5]

---

[4]As required by due process, "meaningful backward-looking relief" operates to place a taxpayer who has suffered an unconstitutional deprivation in the same position as its competitors who were favored by a corresponding—but unlawful—tax exemption. *McKesson*, 496 U.S. at 31; *Chapman v. Comm'r of Revenue*, 651 N.W.2d 825, 839 (Minn. 2002). Such relief may take various forms, including refunding "the difference between the tax paid by the [claimant] and the tax that would have been assessed had the [claimant] been granted the unlawful exemption," the assessment of taxes against those who had previously been favored by the exemption "to put them on equal footing with those who had been discriminated against," or "a combination of a partial refund and a partial retroactive assessment." *Chapman*, 651 N.W.2d at 839-40 (citing *McKesson*, 496 U.S. at 40-41).

[5]For example, the United States Supreme Court has stated that "[t]he right invoked is that to equal treatment; and such treatment will be attained if either their competitors' taxes are increased or their own reduced." *Iowa-Des Moines Nat'l Bank*, 284 U.S. at 247.

Supreme Court
OF
Nevada

(O) 1947A

More importantly, however, a refund is generally not merited when there has been no actual injury. *See McKesson*, 496 U.S. at 31 (stating that due process obligates states to provide relief when the claimant has suffered an "unconstitutional deprivation"). The Commerce Clause is grounded in actual harms and "real injuries." *Gregg Dyeing Co. v. Query*, 286 U.S. 472, 481 (1932). "[E]quality for the purposes of competition and the flow of commerce is measured in dollars and cents, not legal abstractions." *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 70 (1963). Thus, as in both *McKesson* and *Iowa-Des Moines National Bank*, a central consideration is whether, under the tax scheme as actually imposed, competitors are treated equally or whether the tax scheme effects actual discrimination. *McKesson*, 496 U.S. at 40-42; *Iowa-Des Moines Nat'l Bank*, 284 U.S. at 244-46. Implicit in *McKesson* and other similar Supreme Court opinions is a requirement that the party injured by a dormant Commerce Clause violation must actually have a competitor who benefited from the discriminatory tax scheme for the injured party to merit a monetary remedy. *See McKesson*, 496 U.S. at 40, 42; *Iowa-Des Moines Nat'l Bank*, 284 U.S. at 247. If a tax, as actually assessed, does not discriminate against interstate commerce, the tax is lawful and does not violate due process. *See McKesson*, 496 U.S. at 31, 41.

Here, NV Energy has failed to show that the tax, as actually assessed, discriminates against interstate commerce. Specifically, NV Energy did not pay any higher tax than did its competitors—all paid the same tax.[6] No competitor gained a competitive advantage under the

---

[6]NV Energy's competitors also purchased coal out of state and paid use tax pursuant to NRS 372.185.

SUPREME COURT
OF
NEVADA

(O) 1947A

discriminatory tax scheme, nor did NV Energy suffer any actual disadvantage. And, although the exemption to the use tax violates the dormant Commerce Clause, the use tax itself is not unconstitutional. *See Great Am. Airways v. Nev. State Tax Comm'n*, 101 Nev. 422, 428, 705 P.2d 654, 658 (1985). Thus, the tax of which NV Energy complains was lawfully assessed. In essence, NV Energy would have this court grant it a refund of tax dollars it rightfully paid pursuant to NRS Chapter 372 because NRS 372.270 would have unconstitutionally exempted a hypothetical competitor from paying this same tax. We decline to do so. Because NV Energy did not have any competitors who received the tax benefit[7] and, as a result, the tax scheme did not actually discriminate against interstate commerce, a refund—or any other remedy—is not necessary to satisfy due process. Thus, the district court did not err if refusing to award a refund to NV Energy.

---

[7]Even if NV Energy had alleged the presence of a competitor, we would have to answer the threshold question of whether the competitor is a "substantially similar entit[y]" before determining whether NV Energy was entitled to a monetary remedy as a result of a dormant Commerce Clause violation. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298-99 (1997). For a dormant Commerce Clause violation to exist, the claimed discrimination must create a competitive advantage between the "substantially similar entities." *Id.* However, competitive markets are generally narrowly drawn. *See Gen. Motors*, 519 U.S. at 301-03 (concluding that natural gas marketers did not serve the same market as local distribution companies, even though similarly situated geographically); *Alaska v. Arctic Maid*, 366 U.S. 199, 204 (1961) (drawing a distinction between salmon caught and frozen in Alaska but canned somewhere else, and salmon freshly canned in Alaska).

SUPREME COURT
OF
NEVADA

(O) 1947A

Accordingly, we affirm the district court's order.

_____, J.
Hardesty

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A